No. ——

First Circuit

——

# MACKEY v. FULLERTON NAVAL STORES COMPANY

——

(December 22, 1925. Opinion and Decree)
(March 2, 1926. Rehearing Refused)

——

(Syllabus by the Editor.)

1. **Louisiana Digest—Master and Servant —Par. 156.**

One who is employed to drive pegs into trees in order to extract the crude turpentine at a specified price per hundred pegs is an employee and not an independent contractor under the Workmen's Compensation Act No. 20 of 1914.

2. **Louisiana Digest—Master and Servant —Par. 154.**

The Workmen's Compensation Act No. 20 of 1914 should be given a liberal construction.

3. **Louisiana Digest—Master and Servant —Par. 156.**

Under Subsection 2 of Section 1 of the Workmen's Compensation Act No. 20 of 1914, the words, "Sugar houses, sugar and other refineries" include turpentine refineries and operations connected therewith.

4. **Louisiana Digest—Master and Servant —Par. 157.**

The extracting of the turpentine from trees is a hazardous occupation and consequently is covered by Subsection 3 of Section 1 of the Workmen's Compensation Act No. 20 of 1914.

Appeal from Vernon parish. Hon. Hal A. Burgess, Judge.

Suit by Washington George Mackey against Fullerton Naval Stores Company. There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Fern M. Wood, of Leesville, attorney for plaintiff, appellant.

Thompson and Ferguson, of Leesville, attorneys for defendant, appellee.

MOUTON, J.    Plaintiff, in February, 1924, while driving a peg in a tree, the peg flew out and knocked out his left eye. He could then see very little with his other eye, and as a consequence became almost totally blind.   He was then in the employ of defendant company, and brings this suit for compensation against defendant under the Employers' Liability Act, for 60 per cent of his alleged daily wage of $3.00 for a period of 400 weeks.

His demand was rejected and he appeals.

The first contention urged by defendant is that plaintiff was an independent contractor, and as such, can not recover under the provisions of the act.

Defendant company is engaged in the manufacture of rosin and turpentine. A wooden peg must be driven in each tree and on this peg is hung a tin cup into which drips the crude turpentine. This crude product is carried to the refinery of the company where it is refined. Plaintiff was employed as a peg driver. He, with other peg drivers, worked in "gangs" over certain portions of timber lands as were allotted or marked out by the company. The foreman went through the woods about twice a day, and plaintiff says, frequently told him to drive these pegs more substantially and to make a good "crimp". These pegs had to be driven by plaintiff in the way directed by the company and as required by the foreman. W. E. Woodsworth, superintendent of the woods operations for defendant, says the company could not discharge a peg driver if the pegs were driven by him in accordance with specifications.   Evidently the company had the power to discharge if he did not.   Plaintiff lived in one of the houses of defendant, and usually in the morning rode a truck of the company to go to his work. He was not a day laborer, but was paid thirty cents per hundred for driving these pegs, and had been in the employ of the defendant since 1923, as was testified to by the bookkeeper of the company.   The facts of this case show that defendant company retained the power to direct the way in which the work had to be done by plaintiff over whom it exercised control through its foreman or superintendent, and had the right to discharge him if he did not come up to the specified requirements.   He was carried on the pay roll of the company, lived in one of its houses, and went daily to his work with a number of other laborers engaged in the same service.   He was, under this state of facts, a servant within the workmen's compensation statute, and was not an independent contractor.    Burt vs. Davis-Wood Lumber Co., 157 La. 111, 102 South. 87.

The next contention of defendant is that plaintiff was not engaged in one of the hazardous occupations enumerated in the Workmen's Compensation Act.

Defendant in its answer admits, as it is by plaintiff alleged, that it was engaged in the manufacture of rosin and turpentine, and operates a refinery.   Subsection 2 of Act 20 of 1914, and which has not been changed by any subsequent legislation, refers to: "Every person performing

services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations." In Subsection A of the Act these various trades, businesses and occupations contemplated by the statute or enumerated or referred to. In these various enumerations or references this subsection includes: "Sugar houses, sugar and other refineries". Turpentine refineries are not mentioned by name, but, we think, may well be comprised under the words, "and other refineries" used in the act, particularly, as subsection 3 of Sec. 1, provides that if there arise any hazardous trade, business or occupation or work other than those hereinabove enumerated, it shall come under the provisions of this act. An additional reason in support of this position is that the court in Dick vs. Gravel Co., 152 La. 993, in referring to this act said: "It is humane in its purpose, and its scope should be enlarged rather than restricted. Its provisions should be liberally construed so as to include all services that can be reasonably said to come within its terms." Under this liberal construction of the statute, we are of the opinion that a turpentine refinery may be classed, equally with a sugar house or refinery, as a hazardous trade, business or occupation.

It must be noted that the act does not concern itself with the question as to whether or not the services in which the employee happens to be engaged at the time he recieves an injury, be "hazardous" or perilous. The vital question in a case of this character is as to whether the occupation, business or trade in which he is employed is "hazardous" or not. This is plainly indicated by the provisions of subsection 2 of the act. This is the view taken of the statute in Dewey vs. Lutcher-

Moore Lbr. Co., 151 La. 672, 92 South. 273, where the court has this to say on the subject, viz:

"It is the occupation in which the person is employed to perform services, rather than his particular duties, that determines the application of the Act."

Here, the evidence shows that plaintiff with many others, was employed to drive these pegs into the trees upon which the cups were fastened. The turpentine is gathered in these cups from the drippings of the trees. This crude product is sent to the refinery for manufacturing purposes. It is evident that the refinery of the defendant could not be operated without this crude turpentine, because out of this, after the manufacturing process is gone through, a certain article is put on the market. The gathering of the crude turpentine in which plaintiff was engaged, was simply the initial process of the system in which defendant company was engaged in operating its business. It is therefore plain that plaintiff, at the time of the accident, was performing services in the course of his "employer's trade, business or occupation" and which brings his case directly under the provisions of subsection 2 of Act 20 of 1914, and the amendatory acts.

In the case of Durrett vs. Woods, 155 La. 533, 99 South. 430, the defendant company, which employed plaintiff, was engaged in the business of constructing, repairing, maintaining, demolishing and the removing of oil, gas wells and derricks. Plaintiff in that case had nothing to do with the erection, repair or demolition of these oil, gas wells or derricks. He was employed by defendant, merely as a teamster for the hauling of logs and timber for the construction or repair of the derricks. In referring to the duties of this teamster in

the hauling by him of these logs and timber, the court says in the above case:

"Therefore, the furnishing of same and the placing of same upon the location for the well was to all intent and purpose the initiation, the beginning and a part of the construction and erection and putting in operation of an oil well within the meaning of the statute."

By parity of reasoning, here, likewise, the driving of these pegs in the trees constituted the initial step, the beginning of the system adopted by defendant for the operation of its refinery where the finished product was put out through its manufacturing process. In the case of Dyer vs. Rapides Lumber Co., where the employee while making a fire at night was killed in an isolated locality, the court said the accident arose in the course of his employment, and granted plaintiff compensation. In the course of the opinion in that case the court took occasion to say:

"The statute is essentially intended to provide insurance for the employee against all the risks to which he may be exposed by his employment."

Counsel for defendant may say there are not necessarily any risks or hazards attaching to the duty of driving pegs into trees in which plaintiff was engaged when he lost his eye. In the instant case however, there were actually some risks as plaintiff unquestionably suffered the injury of which he complains. Let us say that the particular work in which he was employed involved no hazards or risks as a general proposition, this could not, however, serve as a shield to defendant because as before stated, it (defendant) employer of the plaintiff, was running a tur-

pentine refinery which, under the terms of the act, comes within the designation or classification of a hazardous business, trade or occupation.

To a great extent counsel for defendant relies on the case reported in the 151. La. 672, 92 South. 273. Dewey vs. Lutcher-Moore Lumber Company. In commenting on this case counsel says:

"The Supreme Court held that, although the employment in which the employee be engaged is hazardous, unless the employee is connected, in some manner with the employment, hazardous, he can not recover."

Here, for the reasons hereinabove stated, it was shown that plaintiff was connected with the employment in which the defendant was engaged as the services he was rendering were a necessary and indispensable part of the system under which defendant was operating its business as a manufacturer. In support of his contention that plaintiff had no connection with defendant's employment counsel for defendant offers the following illustration:

"Let us suppose that the Standard Oil Company maintains a sales office in the City of New Orleans, where it is engaged only in the sale of its oil that is refined at Baton Rouge, and a stenographer in that office should drop a typewriter on her feet. Would the court hold, that because the employer was engaged in the refining business in Baton Rouge, it would be held for the damage to the stenographer?"

Clearly not, because this stenographer which counsel has brought in to illustrate his position, could have no connection with the refining or manufacturing of oil by the Standard Oil Company at Baton

Rouge. A situation very different from the one presented here in which it is shown that plaintiff was engaged in the production of the crude turpentine without which the plant of defendant could not have continued in operation. Plaintiff was employed to perform services for the benefit of defendant which was engaged in a "hazardous" trade, business or occupation, and whether the particular duties assigned him were "hazardous" or not, he is entitled to recover under the compensation act. This we understood, to be virtually the ruling of the court in 151 La. 672, 92 South. 273, Dewey vs. Lutcher-Moore Lumber Company.

Plaintiff, it is shown, had only one good eye when the accident occurred, and as a result thereof almost completely lost his sight, and thereafter was unable to do work of any reasonable character.

He claims sixty per centum of a daily wage of $3.00 for 400 consecutive weeks. We find that he is entitled to 60 per cent on a daily wage of $1.50 for that period, his disability being total and permanent.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and it is further ordered and decreed that plaintiff have judgment against defendant for sixty per centum of a daily wage of One Dollar and Fifty cents ($1.50) for a period of Four Hundred consecutive weeks, payable in weekly installments of Five dollars and Forty cents ($5.40) per week with legal interest per annum on all installments, from Saturday the 1st of March, 1924, and on all future installments from the date they become due, with all costs of court.