### TREGRE et al. v. KRATZER et al.
### No. 1146.

Court of Appeal of Louisiana. First Circuit.
May 22, 1933.

Spearing & McClendon, of New Orleans, for appellants.

Schwing & Obier and Jos. Nicolosi, all of Plaquemine, for appellees.

MOUTON, Judge.

Judgment was rendered in this case on January 12, 1932, dismissing plaintiffs' demand, from which an appeal was taken to this court which was dismissed for failure of appellants to cite the appellees. 144 So. 644.

Another devolutive appeal has been taken by plaintiffs and appellants since the rendition of our judgment of dismissal. This second appeal was taken and the bond was furnished before the expiration of one year from the date of the rendition of the judgment by the district judge, and appellees have been properly cited to answer this second appeal.

■ Appellees have each filed a motion to dismiss this second appeal, contending that failing to ask for a rehearing on the judgment of this court dismissing the first appeal and by their petition for a second appeal, plaintiffs and appellants have acquiesced in the judgment rendered by us dismissing the first appeal.

In such a situation if appellants were required to apply for a rehearing before taking their second appeal and the court refused the application, appellees might further contend that a writ of review should be applied for and passed upon, otherwise appellants should be held to have acquiesced in the judgment. Such proceedings, even if limited to a disposition of a rehearing, would cause considerable delay, and in the meantime the right to the devolutive appeal before the expiration of the year from the rendition of the original judgment might expire and appellants would lose their right to a second appeal.

We cannot accede to the contentions of counsel for appellees that the acquiescence to which they refer has operated as an estoppel to appellants' right of appeal.

The motion to dismiss is therefore denied.
Merits.

The suit of plaintiffs in this case was dismissed on an exception of no cause of action

on different grounds, as appear in the written reasons given by the district judge.

In their brief, counsel for plaintiffs and appellants say that: "The sole point which we wish to stress is the issue of the hazardousness vel non of the employment etc." The other issues presented by plaintiffs are therefore abandoned, and we believe properly as we see no merit in them. Hence, our consideration of the case will be limited to the issue submitted by plaintiffs.

In their petition, article II, plaintiffs make the following allegations, viz.:

"That during the months of August and September, 1930, plaintiffs, being engaged in the harvesting of certain rice crops growing in the vicinity of the town of Brusly, found it necessary to hire extra labor for the express and exclusive purpose of cutting standing rice, and accordingly additionally employed therefor approximately seventy-five colored rice cutters comprising both men and women, for whom it was the daily practice to send trucks belonging to the plaintiffs and operated by their regular drivers, in order to pick them up at their various places of residence and transport them to the rice fields where their work was restricted to the cutting of rice."

In article III of the petition, plaintiffs allege that while 15 or 20 of these colored people were being taken in one of their trucks on the highway towards Plaquemine, and about four miles therefrom, a Ford car recklessly and negligently driven by Paul Kratzer, one of the defendants, and coming from the opposite direction, forced plaintiffs' truck off the road where it was overturned and which resulted in injuries to three men, one woman and a boy who were riding in the truck at the time.

Plaintiffs allege that the driver of their truck was free of fault and that the accident was due exclusively to the reckless driving and negligence of Paul Kratzer who was driving for the F. J. D'Albor Furniture Company, his codefendant.

As a consequence of the accidental injuries so received by these negroes, plaintiffs aver that they were obligated to pay the sum of $667.17 as compensation for medical attention rendered them.

It is then alleged by plaintiffs that having become obligated to pay that amount in compensation and having paid it, as aforesaid, they are entitled under Act No. 20 of 1914, as amended, to recover that amount in solido against defendants, with attorney's fees to be fixed by the court, and plaintiffs, accordingly, pray for the recovery of $667.17 alleged to have been paid for compensation, and for attorney's fees.

■ In connection with their statement in their brief, hereinabove referred to, where counsel for plaintiffs say they will only stress the question of hazardousness of the employment, they continue and say further that: "If this Court holds that the employment was hazardous and the payment of compensation proper, then we submit subrogation is automatically effected by operation of law. Paragraph 2 of section 7 of Compensation Act."

It is upon that section of the Employers' Liability Act (section 7, as amended by Act No. 247 of 1920) that plaintiffs claim that they were, upon payment of compensation, subrogated of right to the claim of their injured employees upon which their demand for recovery against these defendants is grounded.

It is therefore essential, first, to determine whether these injured employees had a right to recover compensation against plaintiffs, because if they were not so entitled, there could have been no subrogation in favor of the plaintiffs for the amount claimed, by force of law.

■ In order to arrive at a correct appreciation of this question, it becomes necessary to consider the allegations in article II of plaintiffs' petition reproduced in the beginning of this opinion.

It will be noticed that it is therein alleged by plaintiffs that these colored employees were transported in trucks, "to the rice fields where their work was restricted to the cutting of rice." It will also be observed that in connection therewith, it is also alleged in that article that as extra laborers, comprising men and women, approximately seventy-five colored rice cutters were employed. There are no allegations therein made that plaintiffs were engaged in the business, trade, or occupation of running a rice mill and for which this rice was being cut, or that they were employed in connection with the operation of a threshing machine. From the averments of that article, upon the proper construction of which the solution of this case depends, the inference that naturally suggests itself is that plaintiffs were having this rice cut as a plantation or farming operation. Hence, the employees in the light of these allegations appear as mere farm laborers and as such are not entitled to the benefits of the Compensation Law. Resonia Thompson, Widow, v. J. B. Levert Land Company, 2 La. App. 159.

If plaintiffs had alleged in that article or other part of their petition that they were then engaged in the operation of a rice mill to supply which this rice was being harvested or were operating a threshing machine in connection with the work in which these employees were then engaged, the demand would be covered by paragraph 2 of section 1, subd. (a), Act No. 20 of 1914, p. 44, compensation statute.

Not having so alleged, under the general

and broad averments to which we have referred, these employees must be considered as farm hands, and as such could not, at law, have recovered compensation from plaintiffs.

Counsel for plaintiffs refer to the case of Mackey v. Fullerton Naval Stores Company, 4 La. App. 43, in which defendant admitted in its answer that it was engaged in manufacturing turpentine and that it operated a refinery. Plaintiff, in that case, lost an eye while driving a peg into a tree to extract turpentine. This crude product was sent to the refinery of defendant company for manufacturing purposes. We held that, as defendant company was operating a turpentine refinery, it was engaged in a hazardous trade, business, or occupation under the statute, and that plaintiff was entitled to compensation whether or not the services he was rendering at the time of the accident were perilous or hazardous.

We adhered to these views in the case of Dartez et al. v. Sterling Sugars, Inc., 7 La. App. 414.

There are no averments in plaintiffs' petition to bring this case under the ruling of these decisions.

Counsel for plaintiffs refer to the case of Jackson v. Young, Second Circuit, 6 La. App. 854. In that case plaintiff was injured while driving teams for a corporation which was engaged in the business or occupation of operating a gas pipe line. The court held, in that case, that a gas well could not be operated commercially without a pipe line, and said: "We therefore think that the operation of a gas pipe line is the putting in operation a gas well and it comes under the statute irrespective of who owns the gas well." The court therein based its conclusions on the doctrine enunciated in Durrett v. Woods, 155 La. 533, 99 So. 430, upon which our opinion was grounded in the case of Mackey v. Fullerton Naval Stores, hereinabove cited.

In the case of Jackson v. Young, above referred to, the court said the hazardous occupation applied to the operation of the gas pipe "irrespective of who owns the gas well."

In plaintiffs' petition, in this case, there is nothing to indicate that the rice cut by these colored employees was to supply any rice mill or was handled in connection with any threshing machine which belonged to plaintiffs or to any one else. If such allegations had been made, counsel for plaintiffs could, with some show of reason, invoke the application of the ruling in the case of Jackson v. Young.

Counsel for plaintiffs in their brief, in speaking of this rice, say that the agricultural operations for the production of the rice were completed when it matured. Every step taken after the maturity of the rice, says counsel, was a step leading to its mill-

ing and ultimate marketing. Evidently, we will add, the cutting of the rice was a step in that direction.

In the case of Mackey v. Fullerton Naval Stores Co., 4 La. App. 43, above cited, the tapping of the trees by the employee to extract the rosin was the initial step taken for the ultimate manufacturing of the turpentine at the refinery, and for a like purpose were the services of the employee or employees in the other cases which are in line with that decision.

The initial step taken here by these colored employees in cutting the rice was not directed to any such purpose. It is to be presumed that eventually the rice was to be milled, but where or by whom there is not the remotest indication to be inferred from in the petition. It is possible, however, and not improbable, that the rice could have been sold by plaintiffs or those for whom it was harvested, if it was cut for others, and before it was milled, or might have been otherwise disposed of.

With allegations of such general and indefinite character and therefore susceptible to the foregoing construction, we cannot hold that the employees engaged in cutting that rice were entitled to the benefits of our compensation statute and could have legally recovered compensation from the plaintiffs herein.

Counsel for plaintiffs present their side of the case under another aspect, claiming that as the truck in which these employees were injured had been furnished by plaintiffs in accordance with the custom in their business, they were entitled to the compensation paid to them by plaintiffs. Counsel refer, in support of that contention, to Richardson v. Cresent Forwarding & Transp. Company, 17 La. App. 428, 135 So. 688.

In that case, it was shown that defendant was in the drayage business of hauling heavy freight with motor trucks. Plaintiff was employed by defendant to drive one of its trucks, and while rolling a drum on the truck, was injured. In that case, the defendant was engaged in hauling heavy freight in motortrucks as a business, trade, or occupation. The court found it was a hazardous business and was covered by the Employers' Liability Act. As the business of defendant came under the provisions of that act, and plaintiff was employed in carrying out that business for defendant, it was held by the court that he was an employee under the compensation statute, entitling him to compensation. In that case, the Court of Appeal referred to a prior decision rendered by it in which reference was made to the case of Haddad v. Commercial Truck Company, 146 La. 897, 84 So. 197, 9 A. L. R. 1380.

In that case, the plaintiff was working for

the Commercial Motor Truck Company and was injured while moving a motortruck for that company. Evidently, that company was a corporation engaged in the motortruck business as a trade or occupation. The court, in that case, overruled an exception of no cause of action, holding that the operation by decedent of such a machine came within the purview of the Compensation Act.

The trouble with plaintiffs, in this case, is that they were not running these trucks as a trade, business, or occupation, but used them, according to the allegations of the petition, to transport these employees from their places of residence to the rice fields where they were engaged in cutting rice. Evidently, they were taken there as farm hands, and as before explained, could not, as such, claim any compensation from plaintiffs.

Counsel also refers to decisions where it was held that when an employee rides in a conveyance furnished by his employer to and from his work, that this riding is within the scope of his employment. Citing May v. Louisiana Central Lbr. Co., 6 La. App. 748; Taylor v. Gulf Refining Co., 11 La. App. 270, 122 So. 162; Baker v. Colbert, 17 La. App. 523, 136 So. 210.

In the 6 La. App. case, plaintiff was working as an employee in a saw mill operated by defendant; in the 11th La. App., the employee was working for a company engaged in drilling for oil; and in the 17th La. App., the plaintiff was employed by defendant company which was doing road construction work.

The defendant companies or corporations in those cases were all engaged in their respective undertakings in some trade, business, or occupation recognized as hazardous under the provisions of the Employers' Liability Act, and so found in the decisions therein rendered.

In this case, as before explained, plaintiffs were not engaged in any such trade, business, or occupation, as appears from the averments of their petition. If these allegations showed that plaintiffs were so engaged, as the employees were hurt while riding in a conveyance furnished by plaintiffs, they would have been entitled to claim compensation from plaintiffs for their injuries and plaintiffs would have been in a position to invoke their right by subrogation upon which they are asking for reimbursement. This is not, however, the situation, as before stated.

Counsel for plaintiffs, in emphasizing their right to recover, refer to the riding by these employees in a truck, which, they say, was extremely hazardous by its very nature. This fact is not a factor in the decision of this case, as the Compensation Act does not concern itself with the perilous or hazardous services in which the employee may be engaged at the time he suffers an injury.

The vital question in a case of this character being as to whether the occupation, business, or trade in which the employer is engaged is hazardous or not.

The petition fails altogether to show a case of that character, and it is therefore entirely immaterial whether these employees were or were not exposed to the hazards of the road when they were hurt by the alleged overturning of the truck.

We have endeavored to successfully meet all the contentions of counsel for plaintiffs which are skillfully and earnestly presented, and find, after a careful analysis of the petition and the jurisprudence governing in such cases, that the petition discloses no cause of action, and that the district judge correctly dismissed the suit on that ground.

*Judgment affirmed.*