**CHAMPAGNE et al. v. WELSH MOTOR CAR CO., Inc., et al.**

**No. 1181.**

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

Carmouche & Carmouche, Modisette & Adams, and J. H. Heinen, all of Jennings, for appellants.

Hawkins & Pickrel, of Lake Charles, and John B. Fournet, of Jennings, for appellees.

ELLIOTT, Judge.

Harry J. Champagne, while driving an automobile on the highway between Crowley and Jennings on the night of March 17, 1932, at about 11 o'clock p. m., encountered a motortruck in collision, receiving injuries from which he died three days later.

His widow, Mrs. Levia Champagne, individually and as tutrix of her seven children, all minors, issue of her marriage with the decedent, alleging their dependence on him, his employment by Welsh Motor Car Company, Inc., claims of Welsh Motor Car Company, Inc., and the Maryland Casualty Company, in solido, $6,000 compensation under the Employers' Liability Act of this state. She prays that the compensation be paid in weekly installments of $20 each and for $303.76 in addition thereto on account of physicians' fees, sanitarium and funeral expenses. She alleges that the Maryland Casualty Company carries the compensation insurance of Welsh Motor Car Company, Inc., and made the Maryland Casualty Company a party defendant on that account.

The defendants excepted to her petition on the ground that it was vague and indefinite and set forth no right or cause of action. The exception that her petition was vague and indefinite was not acted on by the court, but the record contains an amended petition in which she sets out her demand with more detail and particularity. The exception of no cause or right of action was by the court referred to the merits.

Defendants, reserving their rights under their exceptions, then answered, denying the facts alleged by the plaintiff as the ground on which the defendants are alleged to be liable. They further allege that her husband was under the influence of intoxicating liquor at the time of the accident, and brought it about himself by his deliberate, wanton, and unlawful conduct and disregard for his own safety and well-being in driving on the highway and by violating a statutory rule concerning the passing on a highway by one automobile of another going in the same direction.

The lower court, assigning written reasons in support of his ruling, admitting certain evidence over the objection of the defendants and for his conclusion on the merits, rendered judgment in favor of the plaintiff as prayed for. Defendants have appealed.

The defendants deny in their answer that the trade, business, occupation of Welsh Motor Car Company, Inc., in which plaintiff's husband was employed, was hazardous. This defense is not urged in defendants' brief and we look on it as abandoned, but defendants' objection to the admissibility of certain evidence and to the probate value of the evidence admitted makes advisable a statement concerning the nature of the business in which plaintiff's husband was employed and the defendant engaged.

The petition avers and the testimony of George Brou, bookkeeper for Welsh Motor Car Company, Inc., shows that Harry J. Champagne was employed by Welsh Motor Car Company, Inc., as its general manager and supervising agent. Welsh Motor Car Company, Inc., bought and sold automobiles, motortrucks, maintained a repair shop, service and filling station, greasing and washing rack. Its domicile was in the town of Welsh in the parish of Jefferson Davis, but it could do business at any other point in the parish or in any parish in the state. Its place of business was kept open day and night. Harry J. Champagne, acting in his said capacity, supervised the selling and attended to everything that the conduct of the business required. He went out on the road in the pursuit of business as he saw proper, was sometimes out at night, and was sometimes absent from its place of business for a day or more at a time. He received a salary of $175 per month, had no regular hours, but all his working time belonged to his employer.

■ The testimony of Charles R. Houssiere, president of Welsh Motor Car Company, Inc., confirms that of Brou as to the authority and duties of the decedent. It is a proper inference, from the testimony on the subject, that the decedent, Champagne, had authority, as the agent of Welsh Motor Car Company, Inc., to make a deal and enter into a transaction with C. B. Carr and to make a trip to Crowley in furtherance of the same, as Brou testifies was done. We are satisfied that the business of Welsh Motor Car Company, Inc., of which plaintiff's husband was general manager and supervisor, was hazardous within the sense and meaning of the Employers' Liability Act of this state, and that his employment and service in connection therewith was hazardous.

Their averment of intoxication and that plaintiff's husband brought about the accident himself by his deliberate, wanton, and unlawful conduct and disregard for his own safety by the violation of a statutory provision concerning the driving of an automobile on a highway while passing another automobile going in the same direction, is also unsupported by any evidence and is not urged in their brief.

■ They contend in their brief that they should not be held liable for the reason that the risk, which plaintiff's husband assumed in attempting to pass a truck ahead of him, was not greater for him than for others driving on the highway, citing Myers v. Louisiana Ry. & Navigation Company, 140 La. 937, 74 So. 256, and Dyer v. Rapides Lumber Company, 154 La. 1091, 98 So. 677, 679.

The present case is not similar and does not come under the reasoning of the court in the case first mentioned, and the one last mentioned supports the position of the plain-

tiff. In that case the Supreme Court, referring to the Employers' Liability Act, says, page 1095 of 154 La., 98 So. 677, 679: "On the contrary, the statute is essentially intended to provide insurance for the employee against all the risks to which he may be exposed by his employment." The risk to which the trip, which plaintiff's husband took, exposed him, was a collision and such a risk comes within the intendment of the statute.

■ We now take up the objection, which the defendants contend should have been sustained. The death of Harry J. Champagne had been established to the court aliunde, and the court, we take it as a matter of course, had been advised by the argument of counsel as to the object and purpose of the plaintiff in offering to show that an agreement had been entered into between the decedent and C. B. Carr, which afforded a chance to sell a truck; that decedent, pursuing this prospect, left defendant's place of business at Welsh at about 10:30 a. m. the morning of March 17, 1932, and after interviewing a party at the Yount-Lee Oil Company plant continued his way to Crowley by way of Jennings. It was necessary under the issue to show that he went as the agent of the Welsh Motor Car Company, Inc., and to that end it was necessary to show his purpose in going and which, due to the death of Champagne and to the fact that he left the defendant's place of business alone and, so far as the evidence shows, traveled that way until he was joined by Lacour at Jennings, could not be proved in any other way.

The position and authority of plaintiff's husband, as agent of Welsh Motor Car Company, Inc., was also established aliunde. George Brou, having testified that he had last seen Harry J. Champagne at about 10:30 o'clock a. m. on the morning of March 17, 1932, as he left defendant's place of business at Welsh, was asked:

"Q. Will you please state to the court, just what deal, if any, Mr. Champagne was working on the day he was killed? A. Well he was working on a sale of a truck to Mr. C. B. Carr. He was discussing the sale with Mr. Carr and me.

"Counsel for defendants at this time wishes to make the objection and make it general to any and all testimony, that may be or sought to be introduced by the plaintiff, which tends to or actually is or amounts to the statement by any witness or the evidence by any witness of what the decedent, Champagne, may have told them what he, the said Champagne, intended to or was going to do or anything, that the said decedent, Champagne, may have purported to have told said witness or witnesses, on the grounds, that the same would be and is hearsay, self-serving and not the best evidence.

"The Court: The objection is ordered to stand as a general objection and is overruled. The statements objected to being admissible as part of the conduct of the defendant corporation at the time they were said to have been made and to be considered only in connection with the consultations among the employees and officers of the defendant corporation."

Under this ruling Brou testified that in a discussion between himself and the decedent that morning at defendant's place of business at Welsh, Champagne declared that he was going to Crowley in an effort to sell some stock in the General American Finance Corporation, which belonged to C. B. Carr; that he loaned him his automobile for the purpose of making the trip; and that he never saw nor heard from him any more until that night, when he was informed of his injury.

The district judge, stating his reasons for overruling the objection and admitting the evidence, used the following language: "The rule in such cases is practical, not technical. If the statement is about matters peculiarly within the knowledge of the person making it and not affected by a self interest known by him at the time; if it was in the furtherance of the business in which he was engaged and made in the course of his duty, and if no better evidence is available, it should be admitted in the interest of justice with caution as to its weight."

The position, which the court took in overruling the objection and in receiving and giving effect to the evidence, was correct. The evidence of Brou and of Charles R. Houssiere, president, justifies the conclusion that Champagne had authority as general manager and supervising agent of Welsh Motor Car Company, Inc., to make a deal with Carr, such as he was said to have made, and to make a journey, such as he was shown to have made, in the effort to sell Carr's stock and in that way bring about the sale of a truck for Welsh Motor Car Company, Inc., if he could. His declaration to Brou preliminary to starting and to others, while making the journey, explanatory of its purpose and object, was part of the res gestæ. They were not self-serving but serving his principal. They were in effect the declarations of Welsh Motor Car Company, Inc., speaking through its agent.

Starkie says: "Whatever the agent says within the scope of his authority, the principal says, and evidence may be given of such acts and declarations, as if they had been actually done and made by the principal himself." Starkie on Evidence, vol. 2, pt. 4, subject "Agents—Declarations by," p. 59 (4th Am. Ed.). Greenleaf is to the same effect. Greenleaf on Evidence, vol. 1, §§ 108 to 114, both inclusive, pp. 122 to 135; Wigmore, vol. 3, subject "Utterances Constituting a Verbal Part of an Act," §§ 1722 to 1776, both inclusive, pp. 2280 to 2285; Jones on Evidence, subject "Declarations of Agents," § 255, p. 321 et seq.; Ruling Case Law, vol. 10, subject "Evidence" § 162, p. 980, in which it is said: "The declaration of a party may be evidence for himself, as part of the res gestæ, when they accompany and explain his actions." In State v. Thomas, 30 La. Ann. 600, the court said: "As to the declarations of a prisoner in his own behalf, unless they form a part of the res gestæ, they are not admissible for the defence. It is otherwise when they are a part of the res gestæ. To be such, it is not necessary that the declarations should be precisely concurrent with the act under trial; it is enough if they spring from it and are made under circumstances which preclude the idea of design. It is only when the declarations are distinguishable in point of time, and are opened to the suspicion of being a part of defendant's plan of defence that they should be excluded."

For the effect of declarations made by the agents of private corporations in the performance of their duty, see Morawetz on Private Corporations, § 540a, pp. 508 to 510; Marshall on Private Corporations, § 364, p. 987; Ruling Case Law, vol. 7, subject, "Corporations," §§ 661 and 662, p. 658 et seq.

■ But the defendants contend that plaintiff's right to recover is not established by the decedent's declarations with that certainty which the law requires. This is the closest question in the case. The contention is that the performance of service must be established by competent evidence, and that the declarations of the decedent are not substantive proof and therefore not competent evidence. The Employers' Liability Act, § 18, subsec. 4 (amended by Act No. 85 of 1926, p. 124), provides that: "The Judge shall not be bound by technical rules of evidence or by technical rules of procedure other than as herein provided, but all findings of the fact must be based upon competent evidence, and all compensation payments provided for in this act shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence."

The proof of service in this case rests on one continuous act and a number of accompanying declarations, each following the other in consecutive order, made at the time of starting on and while making the journey from Welsh to Crowley. The testimony of Brou, Carr, Buckingham, Kimball, and Lacour taken together leads to the conclusion that it was for the purpose of trying to find a purchaser for the Carr stock, and does not justify any other conclusion. If a purchaser had been found, the sale of a truck by Welsh Motor Car Company, Inc., would have been thereby brought about. The effort was made in the performance of service for decedent's

employer. The propriety of taking such a chance in its behalf is not a governing question. The governing question is whether it affirmatively and with reasonable certainty appears from the declarations that the journey was undertaken, made, and pursued in his capacity as manager and agent of Welsh Motor Car Company, Inc., and in its interest and behalf. The declarations are competent within the sense and meaning of the law on the subject of the competency of evidence. Defendant's main reliance is that it is not sufficient for the purpose of establishing plaintiff's demand.

They urge in that connection the delay that elapsed after Champagne had talked with H. E. Buckingham on the premises of Yount-Lee Oil Company before he reached Jennings. The cause for the delay of time that elapsed after he left the Yount-Lee Oil Company plant before he arrived at Jennings is uncertain. He may have stopped to see somebody before he reached Jennings and called on Lacour, but, be that as it may, according to the testimony, it seems that four or five hours intervened, during which time his whereabouts are not accounted for. There is no evidence that he turned aside for any other purpose.

After he reached Jennings and was joined by Lacour, there was further delay. It appears they left Jennings about 6 or 6:30 p. m., but did not reach Crowley until about 8 or 8:30 p. m. After getting to Crowley there was some further delay of two or three hours before they started on the return journey.

Defendants contend that these intervening and unexplained delays indicate that Champagne was not engaged in the performance of service for Welsh Motor Car Company, Inc., but was pleasure bent, but nothing indicates a turning aside of that kind. It is our conclusion that the case was properly decided by the lower court.

Judgment affirmed. Defendants-appellants to pay the costs in both courts.