This is a suit for compensation under the Louisiana Workmen's Compensation Law, Act 20 of 1914, as amended. The defendant is Sun Indemnity Company of New York, the liability and workmen's compensation insurance carrier of Pat J. McMahon-Coburn Company, Inc., a corporation engaged in business in New Orleans as undertakers, morticians and operators of a funeral home.
Plaintiff's husband was president of this corporation, his salary being $105 per week. In addition to his executive duties he was what is known as a funeral director, and in this latter capacity was required to attend funerals and to direct or assist in the loading and unloading of caskets to and from hearses, and he was especially required to operate an automobile, and by means of it, whenever he "directed" a funeral, to precede the funeral cortege from the home to the church and from the church to the cemetery, and, of course, to return from the cemetery after the burial.
The McMahon-Coburn Company owned and operated in its business seven passenger automobiles in addition to one hearse, one ambulance and one "dead wagon", all propelled by gasoline motors and all stored, greased, supplied with gasoline and oil and repaired on the property of the company and by its employees.
The accident from which the death of McMahon resulted occurred on the premises of the employer corporation just after McMahon had returned from lunch, and as he stepped to the ground from the automobile which he had himself driven. He sustained a skull fracture and other injuries from which his death resulted.
It is the contention of defendant insurer that there is no liability in compensation for the reason that the employer corporation was not and is not engaged in one of the occupations within the purview of the statute, the undertaking business and the operation of establishments known as funeral homes not being therein set forth by name and not having previously been judicially declared to be hazardous, and the special contention is made that the operation of automobiles is not so closely identified with nor necessary in that business as to permit it to be said that those engaged therein are engaged in the operation of automobiles.
Plaintiff, on the other hand, maintains that though the business of operation an undertaking establishment is not expressly mentioned in the act, still the operation of automobiles in that business is so necessary to its success as to justify the conclusion that such automobiles are indispensable and that thus the said business must properly be characterized as the operation of machinery since automobiles should be classified as machines and since the operation of machines is expressly and in terms brought within the contemplation of the compensation statute. Plaintiff further maintains that the employer corporation is within the coverage of the act for additional reasons; because large quantities of gasoline are stored on the premises and because the automobiles mentioned are greased and repaired on the premises and by company employees.
Plaintiff makes the further contention that even if it should be held that as a matter of fact the employer corporation is not engaged in an occupation contemplated by the statute, nevertheless the compensation insurance carrier is liable for the reason that it has accepted a premium for the issuance of a policy, one feature of which affords protection against liability for compensation and, having accepted such premium, cannot be heard to contend that under no circumstances could the employer corporation be liable in compensation.
In his reasons for judgment, the district judge said: "* * * the business of undertaker or mortician is hazardous because of the contact of employees with the bodies of those who died of contagious disease, and because of the necessary use of the dangerous instrumentality the automobile, the hearse, or the ambulance * * *".
The judgment was for plaintiff for $20 per week for 300 weeks for herself and 2 children under 18 years of age. The judgment also included $90.65 for hospital, medical and similar expenses, and $150 for costs of burial.
Defendant has appealed.
If by the issuance of a policy in which it agreed to indemnify the employer corporation against loss due to liability for compensation and by the acceptance of a premium therefor the insurer estopped itself to contend that the employer, because of the nature of its business, could not be liable in compensation, then that is an end of the entire matter so we should first consider that contention, which is in the nature of a plea of estoppel. In the first *Page 639 
place, it should be noted that in the policy there is no clause or stipulation which in any sense imposes on the insurer any liability other or greater than that which by law could be imposed upon the employer. The policy is simply an agreement that if the employer becomes liable in compensation to an employee, or to his dependents, the insurer will assume that liability. It is true that it does contain a stipulation that the insurer will make payment directly to the employee or to his dependents and that the employee or his dependents may sue the insurer directly and without the necessity of making the employer a defendant. But this stipulation results from the law which gives these rights where there is a policy and which provides that though no insurance need be obtained by the employer, if it is secured, the insurer must make itself liable directly to the employees provided there is liability in the employer. These stipulations do not in any way nor does the law in any way create against the insurer a cause of action where none exists against the employer. And we know of no reason which would justify the view that the acceptance of a premium operates as an estoppel and prevents the insurer from contending that there can be no liability. It may well be that the nature of a business is such that its operator and the insurer may both feel reasonably certain that it is not within the contemplation of the workmen's compensation statute, and yet that there is a possibility that the courts may differ from them if and when a claim in compensation arises. Why, under such circumstances, should the employer not be permitted to make certain of his own protection by purchasing insurance without, by so doing, cutting off from the insurer the right to make the defense which both think is perfectly sound; that the employment is not hazardous? The statute itself contemplates that no such estoppel shall result for it provides that even the furnishing of medical service or the making of payments by the employer or by the insurer shall not constitute an admission of liability: "Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Act." Sec. 4408, Par. 5, p. 384, Dart's Louisiana General Statutes, Vol. 3, Act No. 20 of 1914, § 18, subd. 5, as amended by Act No. 85 of 1926.
It will be noted that there is no limitation in this provision. Even after the furnishing of medical services or even after the making of a payment the employer or the insurer may still set up as a defense any contention; even that, because of the nature of the employer's business, the employer is not within the contemplation of the statute. In Benjamin v. Standard Accident Insurance Co. of Detroit, 152 La. 874, 94 So. 428, 429, the Supreme Court expressed the view that the issuance of a policy does not make the insurer liable unless the employer could have been held. That was a suit under this statute. It was held that the business of that employer was not hazardous. The court said: "* * * The reason plaintiff cannot recover under the Workman's Compensation Act is that the employment was not dangerous, and that there was no agreement in writing that the parties should come under the act. * * *"
But on behalf of plaintiff it was contended that this defense should not be available to the insurer since the insurer had issued a policy of workmen's compensation insurance. The court said: "* * * but from that fact does not result in favor of plaintiff a right of action under the Workman's Compensation Act. Plaintiff had no right of action under the act against the employer, and has none against the surety of the employer."
See also Rutland v. General Accident Fire Life Assur. Corp., 200 So. 486, 488, in which our brothers of the First Circuit said: "* * * there only remains now the question as to plaintiff's right of action against the defendant, insurance company, Gillespie's surety under the contract of insurance. That question might be the source of further controversy in the case were it not for the fact that the Supreme Court has already specifically held that where an employee has no right of action under the Statute against the employer, he has none against the employer's surety. This ruling was made in the case of Benjamin v. Standard Accident Insurance Co., 152 La. 874, 94 So. 428. * * *"
There is then no estoppel and we pass on to consider whether the employer's business is within the coverage of the compensation statutes. It is well settled that it is not the work performed by the particular employee which determines whether the employer is engaged in an occupation contemplated by the statute. Therefore a consideration of the duties of a particular employee are important only to the extent that *Page 640 
those duties may indicate the nature of the business in which the master or employer is engaged; for whatever may be the duties of the employee, the act has no application unless the trade, business or occupation of the employer brings him under it. The statute itself so provides: "Every person performing services arising out of and incidental to his employment in the course ofhis employer's trade, business or occupation in the following hazardous trades, businesses and occupations". (Italics ours.) Par. 2 of Sec. 1 of Act 20 of 1914. Shipp v. Bordelon,152 La. 795, 94 So. 399; Dartez v. Sterling Sugars, Inc., 7 La.App. 414; Tregre v. Kratzer, La.App., 148 So. 271; Stockstill v. Sears-Roebuck Co., La.App., 151 So. 822; De Lony v. Lane, La.App., 155 So. 476. Thus the fact alone that McMahon drove an automobile or assisted in loading or unloading one is important only if the operation of automobiles was so necessary a part of the business of the employer as to permit it to be said that the employer was engaged in the operation of automobiles.
The operation of a funeral home is not specifically listed in the statute as being within its contemplation. Nor is the occupation of undertaker or mortician mentioned, and in those occupations as they were once conducted there was nothing which could have warranted their being included — there was nothing hazardous about them. Even as late as 1921, it was held by this court that since driving a horse-drawn vehicle was not hazardous, an undertaker who conducted his business by means of horse-drawn vehicles was not within the contemplation of the statute. See Alexander v. Tharp-Bultman-Southeimer Co., Orleans, No. 7373 of our docket (unreported [see Louisiana and Southern Digest.]). But the mere fact that any particular business is not mentioned in the act does not mean that any such non-mentioned business may not be within the coverage of the act if the operator of the business, in conducting it, employs machinery or is otherwise engaged in the doing of any of those things which are listed. As an illustration, let us consider the case of the farmer. Farming is not listed in the act as among the recognized hazardous employments and there is no reason to include a farmer so long as he operates his farm by the use of animal-driven plows, cultivators, wagons, etc., but if the farmer employs tractors propelled by motors or uses other motor-driven vehicles or other machinery, he thereby brings himself within the act not because by so doing he ceases to be a farmer, but because in addition to being a farmer, he has now become the operator of machinery. See Robinson v. Atkinson, 198 La. 238, 3 So.2d 604.
Originally a baker who kneaded his dough by hand and operated his own small oven probably was not included in the statute but today a baker operates machinery to mix his dough, and bakes his bread in an electric oven, and employs other forms of mechanical power. He is still a baker but he now operates machinery. He has become a "power" baker and has brought upon himself the obligations imposed by the statute not because he is a baker but because he operates machinery. The distinction between the old-fashioned hand baker and the modern power baker is well illustrated in State v. Lanasa, 151 La. 706, 92 So. 306. In that case the court also gave an illustration of the distinction between an old-fashioned ice-cream maker cranking an icecream freezer by hand, and the modern ice-cream manufacturer operating machinery of various kinds. There are many trades and occupations which are not named in the statute but which, by the employment of automobiles as a necessary cog, have been converted into hazardous employments and have been brought within the contemplation of our statute.
This principle has never been abandoned nor substantially departed from since the Supreme Court in Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A.L.R. 1380, said: "Where the driver of a motortruck used in his employer's business was killed * * * the death occurred while decedent was engaged in the operation of an `engine and other forms of machinery' within Employers' Liability Law, * * *".
Following the Haddad case there were many which that doctrine controlled, for instance in Holland v. Continental Casualty Co., La.App., 155 So. 63, 64, the court said: "The operation of engines and all forms of machinery is specifically declared to be hazardous, and it is beyond dispute that automobiles, trucks, and other vehicles propelled by power generated by the internal combustion engine are a `form of machinery' under the statute. * * *"
In Richardson v. Crescent Forwarding Transportation Co., Ltd., 17 La.App. 428, 135 So. 688, we considered whether an *Page 641 
employee who was engaged in the loading and unloading of a motortruck could recover compensation and held that since the operation of such trucks was the business in which the employer was engaged, and since the employee who loaded and unloaded them was brought into contact with those trucks, there could be recovery. In Crews v. Levitan Smart Shops, 171 So. 608, we went further and held that a saleswoman who was required to ride from house to house in a motor vehicle should be considered as within the protection of the act since she was brought into contact with an automobile used as a necessary instrumentality in the business of her employer.
Counsel for defendant concede that that doctrine is well established though they maintain that in the Crews case it was extended far beyond its proper limits, and they assert that the doctrine should be limited to those cases in which the use of an automobile is necessary as an important instrumentality in the business of the employer, where the very nature of the employer's business requires the use of motor-driven vehicles and where the automobile is not used merely for the comfort or the convenience of the employee. They say, for instance, that in the Haddad case, in the Richardson case and in the cases of Labostrie v. Weber, 15 La.App. 241, 130 So. 885 and Champagne v. Welsh Motor Car Co., La.App., 150 So. 35, the business of the employer was the transportation of merchandise by motor vehicles, and that in Youngblood v. Colfax Motor Co., 12 La.App. 415, 125 So. 883, the business of the employer was selling and servicing automobiles and they declare that the rule should be limited to that type of defendant and should not be followed except where there is involved an occupation affected with the character of motor vehicles. Of course that contention overlooks the fact that the Supreme Court in refusing to review the case of Crews v. Levitan Smart Shops, supra, apparently approved our application of the doctrine to the case of the saleswoman going from house to house in the sale of merchandise, and using the automobile only for convenience or to "speed up" her sales.
In a supplemental brief, counsel for defendant renew and extend their argument that the statute should not be interpreted as including a non-hazardous business merely because, as an incident in that business, automobiles may be employed, and they argue that the many cases which have held that the mere use of an automobile as a substantial part of an otherwise non-hazardous business brings the business within the statute, result from a misinterpretation of the words of the statute. Conceding the correctness of the Haddad decision, they seek to point out that there the work in which the employer was engaged was more than merely "operating" automobiles and that the employee had been engaged not only "as a driver of motortrucks" but also in "selling and delivering same, and performing any other duties he was called on to do in connection with" the employer's "motortruck business", and they say that he, the employer, was therefore within the terms of the act which lists as hazardous "the installation, repair, erection, removal or operation of boilers, furnaces, engines and other forms of machinery."
But the statute does not require that in order to come within its terms an employer using machinery must be engaged in doing all the things listed above. It states that the employer is brought within it if, as a reasonably important part of his business, he finds it necessary to do any of them. He is within the statute if, as a part of his business, his employees install, or repair, or erect, or operate engines and other forms of machinery. Since it has been so often held that an automobile is a form of machinery, it follows that an employer who finds it necessary to operate an automobile as an integral part of his business is engaged in "the * * * operation * * * of machinery." If he operates machinery he, the employer, cannot be heard to say that his particular kind of machinery is not dangerous. Nor can the operator of automobiles be heard to argue that the circumstances under which his automobiles are operated are such that those who operate them are not engaged in hazardous occupations.
Our attention is directed to the decision of our brothers of the First Circuit in Tregre v. Kratzer, 148 So. 271, 274, in which that court refused compensation to an employee of a rice farmer who came into contact with a motor vehicle only in going to and from his work as a laborer in the field. The court cited Richardson v. Crescent Forwarding Transportation Co., supra, but held that that case was not in point for the reason that there the business of the defendant was the operation of motor trucks, whereas in the Tregre case the business of the defendant *Page 642 
was operating a rice farm. The court said: "The trouble with plaintiffs, in this case, is that they were not running these trucks as a trade, business, or occupation, but used them, according to the allegations of the petition, to transport these employees from their places of residence to the rice fields where they were engaged in cutting rice. * * *"
Shortly after that, in Crews v. Levitan Smart Shops, supra, we found ourselves unable to agree with the conclusion reached in Tregre v. Kratzer, and, concluding that that case could not be distinguished in principle from the Labostrie, the Richardson and the Haddad cases, said [171 So. 611]: "* * * With all due respect to our learned brethren of the First Circuit we cannot understand how it can be said that riding in a motor-driven vehicle is within the scope of the laborer's employment and yet not covered by the Compensation Law. Nor can we understand how, in view of the holding in the Byas case [Byas v. Hotel Bentley, Inc.,157 La. 1030, 103 So. 303] to the effect that an employer's business which though not per se hazardous may involve hazardous features entitling employees connected with the hazardous part of the business to recover, it can be said that a rice planter who uses a motortruck as an incident to his business operations is not to that extent engaged in a hazardous occupation. At any rate, we find ourselves unable to agree with the opinion of our brethren of the First Circuit."
In spite of that statement, when application was made for a writ of certiorari, the Supreme Court refused to grant such a writ, apparently approving the conclusion reached by us.
Later in Comeaux v. South Coast Corporation, 175 So. 177, 179, we again considered whether a farm laborer who was customarily transported to and from work in a motor vehicle could be considered as within the protection of the compensation act, the question being whether the operation of motor trucks justified the characterization of the business of the employer as a hazardous one within the contemplation of the statute. We said that the question had already been decided by us and that our decision had apparently "received the approval of the Supreme Court." But again we called attention to the apparent disagreement between ourselves and our brothers of the First Circuit. In spite of this, however, again the Supreme Court refused to grant a writ of certiorari.
Still later the Court of Appeal for the First Circuit was again presented with a very similar question and held that the employee who was being transported from one place of work to another in a motor vehicle could not recover — Lewis v. A. Moresi Co.,196 So. 70, 73, and there that court again pointed to the disagreement between themselves and this court and said: "* * * For our part, we entertain a serious doubt that the Compensation Act contemplated any such contact as the mere riding in a truck with absolutely nothing to do with its operation and movement when it included among the hazardous occupations as listed, `the installation, repair, erection, removal or operation of boilers, furnaces, engines and other forms of machinery,' and in the case presently before us, we think it would be stretching that provision a bit far in order to bring the injured employee who was entering a tractor-drawn wagon for his first and only ride within its terms."
It is true that the Supreme Court refused to grant a writ of certiorari when application was made in this case (Lewis v. A. Moresi Co.) but in our opinion the reasons given by the Supreme Court support our view that where the employee is transported regularly or customarily in motor-driven vehicles, the compensation statute has application. The Supreme Court, in refusing the writ, said: "Under the facts found by both the district court and the court of appeal, and considering particularly the fact that the plaintiff in this case was not employed to operate the tractor or its equipment, or to perform any service connected with these contrivances, the judgment of the court of appeal is correct. The petition for a writ of review, therefore, is denied."
An analysis of these reasons and a study of the opinions of the Court of Appeal and of the District Court shows, in the first place, that the employee, as the Supreme Court stated, did not operate the tractor nor ride on it, and did not perform any service connected with it. He did not load it or unload it or repair it, and, most important of all, as the Court of Appeal found, he did not have any duties "which required him to come in contact with automotive vehicles." As we have said, he did not even ride on the motor-driven vehicle itself but only on the wagon which was being pulled by it, and he *Page 643 
rode on that wagon only on that one occasion. The Court of Appeal said: "He boarded a tractor-hauled cane wagon only once during the period of his employment, which apparently was a long one. * * *"
Still later, in Allen v. Yantis, 196 So. 530, 534, the same Court of Appeal of the First Circuit again considered a similar question and again reached the same conclusion, referring again to Tregre v. Kratzer, saying: "We are persuaded that the decision is correct in principle."
No application for writ was made in that case because the Court of Appeal remanded the matter for other reasons.
In the meantime, while this controversy was raging between ourselves and our brothers of the First Circuit, for whose views we have a very high regard, though on this point we cannot agree with them, the Court of Appeal for the Second Circuit considered a case which we think interesting, Moritz v. K.C.S. Drug Co., 149 So. 244, 246, holding there that a drugstore which owned a motor-driven bicycle and used it in making deliveries was engaged, to that extent, in a hazardous business. The Court said:
"A motorcycle is propelled by a gasoline engine. The operation of engines and machinery is declared hazardous in subsection 2 (a) of section 1 of the act; hence the delivery of packages by motorcycle is a hazardous occupation. Lemmler et al. v. Fabacher, 19 La.App. 144, 139 So. 683; Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A.L.R. 1380; Burt v. Davis-Wood Lbr. Co., 157 La. 111, 102 So. 87.
"The delivery of packages is admitted to be an essential part of defendant's retail business.
"We then have before us the situation of a defendant whose main business is non-hazardous, with a necessary branch that is hazardous, and an employee injured while engaged in the hazardous branch."
Still later, in Robinson v. Atkinson, 198 La. 238, 3 So.2d 604, 605, the Supreme Court found it necessary to reverse the holding of the Court of Appeal for the Second Circuit in a case in which a farmer borrowed a motor-driven feed chopper and operated it in connection with his farming operations. The Supreme Court held that though the farmer is not specifically classified in the act, nevertheless he brings himself within its terms when he employs machinery in his farm operations. The Court said:
"Our conclusion therefore is that the case is governed by the Employers' Liability Act and hence that the judgment of the district court is correct and should be reinstated and affirmed.
"The case is not affected by the fact that the machine which caused the injury was borrowed by the defendant from a neighbor and was used only five days on the defendant's farm before the accident happened."
We have discussed all of these cases in detail because we think that all of them have bearing on the issue which is now before us. We believe, however, that even if the views of the Court of Appeal of the First Circuit are correct, and that we are in error in the opinion expressed by us in the Crews and other similar cases, nevertheless, there must be recovery in the case at bar for the reason that the operation of automobiles and other motor-driven vehicles in the business of the employer was so necessary as to justify the conclusion that their use was indispensable to the successful carrying out of that business. Even if it be held, therefore that the mere incidental use of an automobile does not convert an otherwise non-hazardous business into one within the coverage of the statute, surely the use of automobiles as an essential and indispensable part of a business would convert an otherwise non-hazardous business into a hazardous one.
The argument that the doctrine has been extended beyond its logical limits and should not be further extended, would find some support in the opinion rendered by the Supreme Court in Brownfield v. Southern Amusement Co., 196 La. 73, 198 So. 656, 661, had that opinion become final, for there the Supreme Court said: "We think the doctrine that was first applied by the Court to employments in which automobiles were either used, maintained, sold, or operated should be limited to proper cases and should not be held to apply where the use or maintenance of the automobile is so remotely connected with the employer's business as to make the risk from its operation negligible. There is some risk connected with every employment. It is inconceivable that a salesman in a mercantile establishment, a stenographer in a professional office, or one of the numerous classes of employees engaged in clerical capacities, who might occasionally use an automobile in the performance *Page 644 
of an errand for his employer, would come within the terms of the Workmen's Compensation Act and that the employer would be obligated to compensate an employee who is injured in discharging his work in the establishment or office itself. If the interpretation of the Workmen's Compensation Act can be extended beyond the extremely liberal interpretation given to it in the case of Byas v. Hotel Bentley [Inc.], [157 La. 1030,103 So. 303], supra, there would be no such thing as an employment not covered by the provisions of the statute. Every injured employee, or his dependents when the injury is fatal, would be entitled to compensation. Thus workmen's compensation imposed by statute, in substance, would become the equivalent for life and accident insurance founded on contract."
We quite agree that that language is most significant and that in it there is at least a suggestion that the limit has been reached in the extension of the doctrine that the mere use of an automobile brings the employer within the statute. Even more significant than this language is the fact that the court in granting the writ of certiorari did so in spite of the fact that the Court of Appeal (198 So. 670, 673) had found that in the performance of her duties "it was necessary for plaintiff to use an automobile" and that "she did use one daily * * *". By granting a writ of certiorari in this case in which the established facts were that the use of the automobile was necessary and that it was used daily, the Supreme Court indicated that it was not satisfied that in every case in which the use of an automobile is necessary, the employer, because of that necessity, is brought within the statute. However, when the Court considered the matter it did not reach the conclusion that in spite of the fact that the use of an automobile was necessary, it was not proper to hold the employer liable under the act for it found the facts not as the Court of Appeal had found them, that the use was necessary, but that plaintiff "occasionally used her own automobile" and that its use was "remotely connected with her employer's business." It is obvious then that the court's holding — and even this holding never became final — was based on the view that if the use of an automobile is only "remotely connected" with the employer's business, then that use does not characterize that business as hazardous. But this is very far indeed from a holding that where the use is necessary as an integral part of the business, the business should be characterized as hazardous.
In the first place, however, it should be noted that that decision never became final because on application a rehearing was granted and the matter was compromised before the rehearing could be had. In the second place, even if the doctrine of the Haddad case and those others cited should be limited to "employments in which automobiles" are "used, maintained, sold, or operated" and "should not be held to apply where the use or maintenance of the automobile is so remotely connected with the employer's business as to make the risk from its operation negligible", we find ourselves asking whether in the undertaking business as it must be conducted today, the automobile is not a necessary — in fact an indispensable — instrumentality. If in the transportation of merchandise automobiles are necessarily used, and if this necessity brings those who must use them in their business within the contemplation of the statute as was held in the Haddad, the Richardson and other similar cases, what distinction can be found in the business which transports caskets as its most important feature?
If the taxicab business is covered by the act because the cabs transfer passengers (Plick v. Toye Bros. Auto Taxicab Co., 13 La.App. 525, 127 So. 59), what distinction exists between that business and the undertaking business in which the vehicles transport those who attend funerals? Thus even if the Brownfield case be accorded the respect which is due the decisions of our Supreme Court, it affords no comfort to defendant for even under the view announced there the business is within the coverage of the act if the use of automobiles is necessary in the carrying on of the business. Therefore, we conclude that because it is necessary that the employer use automobiles in its business, the employer is within the contemplation of the Workmen's Compensation Statute and that a recovery may be had by the dependents of an employee who, in the performance of his duties, necessarily came into contact with those automobiles.
That the modern undertaking business, which necessarily operates automobiles, is within the coverage of the statutes is not a new thought with us. It may be of historical interest to note that though in *Page 645 
Alexander v. Tharp-Bultman-Southeimer, supra, we held in 1921 that an undertaker was not covered by the act because, at that time, he used only horsedriven vehicles, we held only a little later in that same year, 1921, that an undertaking establishment was liable in compensation for the reason that "operating a motordriven vehicle for business purposes, constitutes `operating an engine or other machinery' within the meaning of the Workmen's Compensation Statute." Stewart v. Bultman, Sons Co., Orleans No. 7940 of our docket (unreported [see Louisiana and Southern Digest]). We likewise so held in Hecker v. Betz, 172 So. 816.
Since the accident occurred while McMahon was alighting from the automobile, it is proper to say that he was injured while in contact with one of the hazardous features of the employer's business, though even this would not be necessary since all that is required is that the employee be sometimes brought into contact with one of those hazardous features, regardless of whether the accident is caused by such hazardous feature or not. Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303.
Though plaintiff brought suit on behalf of herself and three children, the record shows that at the time of the death of her husband, there were only two children who were under 18 years of age. Of course this made no difference since the compensation statute awards the maximum percentage, 65, to a widow and two or more children. See Dart's La.General Statutes, Sec. 4398, Vol. 3, p. 341, Act No. 20 of 1914, § 8, as amended by Act No. 242 of 1928. Each of these two children will become 18 years of age before the expiration of the 300 weeks fixed in the statute, and as each reaches the age of 18 it may be that an adjustment will be required. We say this because we consider it an open question whether such a result will be necessary. The salary which the deceased was earning at the time of his death, $105, would have authorized an award to the widow alone, had there been no children, of the maximum amount permitted by statute, $20. See Dart's La.General Statutes, Sec. 4398, Vol. 3, p. 342. However we do not undertake at this time to determine this question. The facts of Selser v. Bragmans Bluff Lbr. Co., La.App., 146 So. 690; Id., La.App., 167 So. 160, were somewhat different and the conclusion reached there was based on the fact that because there were children of two marriages it was necessary for the judgment to make a distribution of the total award. A distribution is not necessary here since under the statute the total payment must be made to the widow. The case of Litton et al. v. Natchitoches Oil Mill, Inc., La.Sup., 9 So.2d 445, may throw some light on this question.
It is very obvious that the claim for damages for frivolous appeal should be denied. It is clear that there was nothing frivolous about this appeal and it is equally certain that the questions presented had not been so clearly settled as to justify such an award.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.