No. ——

First Circuit

DARTEZ ET ALS. v. STERLING SUGARS, INC.

(January 5, 1928. Opinion and Decree)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 158.**

One employed as a driver of a cart to haul cane who stops to help untangle the twisted line to a derrick hoist which could not operate and unload the carts was within the scope of his employment even though he was not asked to do this work by his fellow employee who accepted his services.

2. **Louisiana Digest—Master and Servant —Par. 154, 158.**

The Employers' Liability Act No. 20 of 1914, as amended, is essentially intended to provide insurance against all risks to which the employee may be exposed by his employment, thus covering work done by driver of a wagon hauling cane to a steam derrick voluntarily assisting around the derrick when such work was needed.

3. **Louisiana Digest—Master and Servant —Par. 154, 157.**

It is the occupation in which the person is employed to perform services rather than his particular duties that determines the application of the Workmen's Compensation Act No. 20 of 1914. The hauling of cane to the derrick was part of the operation of the factory where the finished product was made, and, therefore, the business was hazardous within the meaning of the Workmen's Compensation Act No. 20 of 1914, as amended.

Appeal from the Parish of Iberia. Hon. James Simon, Judge.

Action by Felix Dartez et als. against Sterling Sugars, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Porteus R. Burke, of New Iberia, attorney for plaintiff, appellee.

Burke & Smith, of New Iberia, attorneys for defendant, appellant.

ELLIOTT, J., concurs for written reasons herein.

MOUTON, J. The defendant company operates a sugar factory near the town of Franklin, La. It cultivates sugar cane in the Parish of Iberia on the Peeble's Plantation, as a feeder for its factory. The cane is hauled from the plantation to a derrick by drivers or teamsters, from where it is transported by railway to the factory.

Aymar Dartez was employed as a teamster by the company to haul cane to the derrick. He was killed near this derrick on December 15th, 1925. His parents brought this suit against defendant company, as dependents, to recover compensation under the Employers' Liability Act.

The first duty of the deceased, as the driver of a wagon or as a teamster, was to haul the cane to the derrick. After he got there he had to hook the cane in a rope or sling to have it hoisted into a car for transportation. As soon as the cane was unloaded he had to return to the field for another load. Such was the ordinary work which was required of him under his contract of employment. It is shown that when there was an unusual number of wagons at the derrick, and cane had fallen from the wagons, the teamsters were called to help in clearing the way for the passage of the wagons, and sometimes to assist Rogers, a one-armed man, to pull the rope to lift this cane into the cars. Greig, witness for plaintiff, says that the teamsters, at times, helped to pull the cables. Peter Meyers, another of plaintiff's witnesses, says he did all sorts of work around the derrick, except to operate the steam derrick. The witnesses for defendant say that these teamsters were never called upon to assist in the manner testified to by the witnesses above referred to. We believe, however, that the evidence justifies the conclusion that the drivers of the wagons were not restricted to the hauling of the cane to the derrick, and to hook them for hoisting into the railway cars. Their functions had been extended to other duties, at various times, as above indicated. It frequently happened that the teamsters would, of their own will or voluntarily, proffer their services around the derrick as exigencies might arise, and without regard to the character of the work performed, and it is not in the evidence that the services so proffered were ever refused. The running of the derrick in the manner stated had been going on for quite a while before the accident, and had, no doubt, received the approval of those in charge of its operations. The record shows that the derrick was operated by the engineer, a one-armed man, as hoister, and two negro boys, one aged about sixteen and the other about twelve, which probably accounts for the necessity that arose at various times for the assistance of these teamsters. The evidence shows that Rutson Boutte was the engineer who was operating this steam derrick. It is shown that Aymar Dartez, the deceased, was in the act of assisting him in rolling a rope on the drum when his arm was caught in the cable by which he was dashed against the boiler and killed. This was caused by the act of the twelve-year-old negro boy, who, of his own volition and unexpectedly, started the engine. Boutte, the engineer, says he had not called on the deceased to help him put the cable around the drum. The record sup-

ports this statement, as it shows that the deceased went to the assistance of Boutte without any call from him. It appears, however, that he had been helping Boutte about ten minutes before the accident occurred. Boutte says he had not asked for his help, and that he had told him to go back to his wagon. The proof shows that two parties were standing at about three feet from the point where Boutte and deceased were working to place the rope on the drum. These witnesses never heard Boutte tell deceased to return to his wagon. We have no doubt from the position they occupied, if Boutte had given any · such order to the deceased, he would unquestionably have been heard by them, or even if he had shown any sign of displeasure because of the presence of deceased, these witnesses would have perceived it. The record shows that Boutte accepted the services of deceased without objection, and which were in line with the help or assistance that had been given by the teamsters in many instances for the operation of the derrick. His acceptance of the help of the deceased was equivalent to a call upon him by Boutte, and the services which were thus being rendered by Dartez, under the facts and circumstances of the case, ·fell within the scope of his employment, as he was then engaged in the discharge of a function or duty, which he was authorized to undertake, and which was calculated to further, directly or indirectly, his master's business. Myers vs. L. R. & N. Co., 140 La. 940, 74 So. 256.

In performing these services, and when killed, deceased was subjected to risks to which he was exposed by the nature of his employment. In the case of Dyer vs. Rapides Lumber Company, 154 La. 1094, 98 So. 677, deceased was killed at night in the woods in an isolated spot by unknown parties while he was making a fire in an engine of defendant company. The court found that the accident arose out of and in the course of his employment within the Workmen's Compensation Statute. The court said that he had been exposed to those risks by the nature of his employment, and held the defendant company liable, remarking, in coming to that conclusion, that the statute was intended to provide insurance for the employee against such risks. "Hence," says the court, "the statute expressly provides that the employer shall be liable even when the injury occurs through the tort of a third person. Section 7." This doctrine was approved in Yellow Cab Co. of New Orleans vs. Jones, 156 La. 841, 101 So. 216, where the court said, for a stronger reason, the employee should obtain relief when the injury results from the tórt of a fellow employee, as the statute is essentially intended to provide insurance against all risks to which the "employee may be exposed by his employment".

The negro boy who started the engine that caused the accident was a "water boy" for the defendant company, and a fellow employee of deceased. It was through his tortious or negligent act that Dartez lost his life. We find that the killing of the deceased was the result of an accident, "arising out of and in the course of· his employment" within the Employers' Liability Act.

.Defendant company contends that it is engaged in the Parish of Iberia in agricultural pursuits; that the derrick was merely used to transport the cane from the plantation to its sugar factory near Franklin. Therefore, that the defendant cannot be construed as engaged in a hazardous business simply by reason of the fact that it was necessary to operate a steam derrick for the transportation of the cane. In the reports of the Court of Appeal, Vol. 4, p. 43, Mackey vs. Fullerton Naval Stores Company, we had occasion to pass on a

similar question. In that case we said the Compensation Act does not concern itself with the question as to whether or not the services in which the employee happens to be engaged at the time he received an injury be hazardous or perilous. Our conclusion was based on the doctrine announced in Dewey vs. Lutcher-Moore Lbr. Co., 151 La. 672, 92 So. 273, where the court had the following to say on the subject: "It is the occupation in which the person is employed to perform services, rather than his particular duties, that determines the application of the act." Our decision was further grounded on the case of Durette vs. Woods, 155 La. 533, 90 So. 430, where it was shown that defendant, employer of plaintiff, was engaged in the business of constructing, repairing, demolishing and the removing of oil, gas wells and derricks. Plaintiff, in that case, had nothing to do with the erection, repair or demolition of those gas wells or derricks. He had been employed as a teamster for the hauling of logs and timber for the construction or repair of these derricks. In referring to the duties of this teamster in the hauling by him of these logs and timber, the court says in the above case:

"Therefore, the furnishing of same and the placing of same upon the location for the well was to all intents and purposes the initiation, the beginning and a part of the construction and erection and in putting in operation of an oil well, within the meaning of the statute." Likewise here, the hauling of the cane to the derrick for transportation was the initiation or beginning of the system which had been adopted by defendant for the operation of its factory where the finished product was put out through its manufacturing process. The business in which defendant company was engaged was "hazardous" and it cannot escape liability on the plea thus tendered.

Judgment was properly rendered in favor of plaintiff.

———

CONCURRING OPINION OF ELLIOTT, J.

Under the evidence, it was the duty of Aymar Dartez, as driver of a cart, upon arriving at the hoist with his loaded cart, to attach hooks to the load of cane, whereby the load was hoisted into the car.

The power lines leading to the drum, whereby the hoist was lifted, had become twisted and entangled, and as a result the hoist had stopped, and could not be operated to unload the carts.

It was while helping to untangle the twisted line so that the hoist could operate and unload the carts, that the plaintiff's son was killed.

I submit these as additional reasons why Aymar Dartez was helping in the work in which he was engaged.