### STAPLES v. HENDERSON JERSEY FARMS, Inc.

#### No. 5651.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Rehearing Denied April 1, 1938.

McBride & Goff and Barksdale, Warren & Barksdale, all of Ruston, for appellant.

Fred G. Benton, of Baton Rouge, for appellee.

TALIAFERRO, Judge.

Plaintiff, Mrs. Grace W. Staples, the surviving widow of Wm. Shelton Staples, deceased, in her own behalf, and as the mother of Donald Womack and Charley Sitman Staples, minors under the age of eighteen years, brings this suit to recover workmen's compensation of defendant for 300 weeks at the rate of $14.25 per week, plus the maximum allowance for physician's, hospital, and medical bills incurred in connection with the injury and death of her said husband. She alleges that the deceased was the manager and an employee of the defendant company, and that he was accidentally injured while operating one of its trucks in the performance of his duties early the morning of April 5, 1936, and died some three hours thereafter. She further alleges:

"4. That the said Henderson Jersey Farms, Inc., was at that time and is now engaged in a general dairying business, and in that purpose in part produced its own milk, and in other instances purchased milk and sold and distributed varying quantities of milk by retail and wholesale, and owned and operated one truck that was used regularly in its business to make milk deliveries and for other purposes, and that it was a regular part of the duties of petitioner's husband to drive the truck every other day on a run to C. C. Camp, and that his duties otherwise often required him to drive said truck for the purpose of making milk deliveries, and generally in performing his duties as the manager of and as an employee of said company.

"5. That the maintenance and operation of this truck was essential to the business of said company, and that petitioner's husband's duties, as shown, required that he not only assist in maintaining said truck but that he regularly operate the same, and that thus his duties were hazardous in the sense of the Employer's Liability laws of the State of Louisiana."

Defendant excepted to the petition on the grounds that it did not disclose a right or cause of action. The exception was overruled. It is reurged here.

In its answer, defendant admits that Staples was its manager when killed, and that it owns a herd of Jersey cattle, several hundred acres of land, and operates a dairy thereon. All other allegations of fact and conclusions of law embodied in the petition are denied. Defendant avers that deceased was its vice president and general manager, and, as such, declined the suggestion of the corporation's other members that compensation insurance be carried by it, for the assigned reason that he did not consider the business hazardous or the expense to do so justified; that for this reason, plaintiff is estopped from claiming compensation for his death. It is further alleged as a defense that deceased was not in the course of his employment when injured, in that he was driving defendant's truck in violation of instructions of its president, the owner of 98 per cent. of the company's stock; that said president learned that deceased was subject to spells of dizziness and would grow faint while driving said truck, and thereupon expressly directed deceased not to operate said truck at all, but to have other drivers do so.

There was judgment for plaintiff for weekly payments of $13.85 from April 5, 1936, to August 21, 1937, and for $9.85 thereafter until the expiration of 300 weeks from April 5, 1936. The lack of uniformity in the weekly payments is due to the fact that one of the minors attained eighteen years of age on August 21, 1937. Defendant appealed.

## Exception of No Cause or Right of Action

Defendant's position on the exception is that the business or occupation of operating a general dairy is not denominated hazardous by the statute and has not that character per se; that its nonhazardous character is not metamorphosed simply by the daily use of a motortruck in the conduct of its business.

The Workmen's Compensation Law, Act No. 20 of 1914, as amended, provides that compensation shall be due,

"Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses, and occupations: * * *

"The installation, repair, erection, removal or operation of boilers, furnaces, engines and other forms of machinery." Section 1.

██ In construing these provisions in Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A.L.R. 1380, the Supreme Court held that a motortruck, propelled by a gasoline engine or motor, was an "engine or other forms of machinery" within the intendment of the statute, and overruled the exception of no cause of action which had been sustained by the lower court on the ground that the use of the truck did not stamp defendant's business as being a hazardous one. This decision has, so far as we are apprised, been uniformly followed by all courts of the state. The allegations of the petition in that case, analyzed to some extent in the opinion, are somewhat similar to those of the case at bar. The rule is also well established that in suits to recover workmen's compensation, unless the petition clearly discloses no right of action in plaintiff, that exceptions of no right and no cause of action should be overruled. All doubts are resolved in favor of the sufficiency of the petition. Stockstill v. Sears-Roebuck & Co., La.App., 151 So. 822; Kinnard v. Rice Drilling Co. et al., La.App., 172 So. 592.

It is not necessary to the efficacy of the petition that it be specifically alleged that the employer's business is hazardous per se or made so by law. Hinton v. La. Central Lbr. Co., La.App., 139 So. 554.

An early expression of the Supreme Court on these questions may be found in Pierre v. Barringer, 149 La. 71, 88 So. 691, wherein it is said: "A critical examination of the petition, which is carelessly drawn, would show that it does not technically embrace a cause of action. But its general purport shows it to be a suit by an employe against his employer for compensation for an accident while the plaintiff was in the employ of the defendant and while he was supposed to be acting in the performance of his duties."

These pronouncements of the courts have as their fundamental basis the following liberalizing section of the Workmen's Compensation Law: "The Judge shall not be bound by technical rules of evidence or by technical rules of procedure other than as herein provided, but all findings of the fact must be based upon competent evidence." Act No. 20 of 1914, § 18, as amended by Act No. 85 of 1926, p. 122.

██ The ruling of the judge a quo on the exception has our approval. If we felt otherwise about the exception's merits at time filed below, we would now, in view of the record as finally confected, be constrained to adjudge it impotent for the reason that the allegations of the petition, by the admission of considerable testimony without objection, have been materially enlarged. This testimony discloses that defendant's plant consists of a boiler, pasteurizing equipment, and refrigerating system, etc. Two or three electric motors supply the energy needful to the plant's operations. The motors have wheels, belts, and pulleys. A tractor, propelled by internal combustion engine, is also owned by defendant and is used in tilling its lands. Surely the operation of this equipment in the promotion of defendant's business brings it clearly within the provisions of the act as regards hazardousness. The act specifically declares that the operation of "boilers, furnaces, engines and other forms of machinery" is a hazardous trade, business, or occupation. The fact that this machinery, etc., is a component part of the general dairy business should not and does not alter the legal situation. For the purpose of the statute, defendant is engaged in the business of operating a boiler, engines, etc., to accomplish a definite result, viz., successful conduct of its dairying business. Without the hazardous phase of the general business, there would be no general business. This is as important to its existence as is milk itself. If this same machinery were

employed to filter water for sale or launder clothes or convert grain into meal or flour, would not the result be the same, so far as the Compensation Law is concerned? We can perceive no good reason to think otherwise. It is employed to prepare raw milk for market. It is the means to the accomplishment of an end as is true in the hypothetical cases mentioned.

Defendant's earnest counsel argue at length, and forcefully so, in support of the exception, that the business of conducting a dairy is a farming pursuit, and, therefore, from its very nature, nonhazardous. The cases of Resonia Thompson v. J. B. Levert Land Co., 2 La.App. 159; DeLony v. Lane et al., La.App., 155 So. 476, and Bradley v. Blakely, La.App., 154 So. 415, are relied upon to sustain this position. The last two of these cases are from this court. We hold to the opinion that the law was correctly declared and applied to the facts of each case. In the Bradley Case it was held that the cutting of pulpwood from farm lands, and marketing it, was merely incident to farming, and not "manufacturing" within the meaning of the Workmen's Compensation Law; and therefore a laborer injured while working for the owner of the farm in cutting, hauling, and marketing the pulpwood, was not entitled to compensation. In the DeLony Case, we held that a bricklayer injured while repairing a chimney of the plantation owner, the employer, was not due compensation on the ground that the building and repairing of chimneys was not a trade, business, or occupation of the plantation owner. Such was merely incidental to the operation of the plantation, essentially a nonhazardous business. The Resonia Thompson Case was decided by the Orleans Court of Appeal. The related facts disclose that a laborer in the rice fields of defendant was injured seriously on his way to work. He died from the injuries. His widow's suit for compensation was rejected on the fundamental ground that defendant's business, that of operating a rice plantation, was not hazardous per se or under the law.

■ There are some phases of a dairying business that are nonhazardous per se. Among these may be listed the milking by hand and feeding of cows; tilling land necessary to produce feed for the milch cows; and selling of its products by delivery at the plant. But the ownership and operation of a truck, boiler, engines, motors, etc., are indispensable to the suc-cessful conduct of a general dairying business at the present time. They may not be classed as merely incidental to the principal business. A business may consist of several departments, some of which are hazardous per se or made so by law, while others are clearly nonhazardous; and it is now well settled that an employee, whose duties require him to perform services in both the hazardous and nonhazardous departments, and who is injured while performing nonhazardous services, may recover compensation. These principles were first announced in Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303. A fortiori, is compensation due if injury is sustained in the performance of services necessary to carry on the hazardous part of such business. See Stockstill v. Sears-Roebuck & Co., supra; Crews v. Levitan Smart Shops, Inc., La.App., 171 So. 608; McAllister v. Peoples Homestead & Savings Ass'n, La.App., 171 So. 130, and also Wood v. Peoples Homestead & Savings Ass'n, La.App., 177 So. 466.

In the present case, it is undisputed that the deceased daily had intimate touch with each and every phase of defendant's business. He made deliveries of milk in the truck. It was his duty to and he did keep the plant machinery in good running condition. Necessary mechanical repairs were personally done by him. He lost his life by the overturning of the truck when returning from a delivery of milk to a customer thirty-six miles south of Ruston, La., the plant's location.

■ The exception also contains the averment that the deceased was the secretary-treasurer and general manager of defendant's business, and for this reason plaintiff may not successfully claim compensation for his death. In other words, that he was not an employee, servant, or laborer, in contemplation of law, and, without this status, compensation is not recoverable. This point is not briefed. Apparently it has been abandoned. We think it without merit. The deceased owned one share of the capital stock of the company. Its president owned 98 shares, and, presumably, one other share was ostensibly owned by another person. It was necessary to have at least three stockholders to effect corporate entity. The president lived in Beaumont, Tex., and visited the plant only once or twice per month. The deceased supervised the business in all its departments. In addition to this, he milked cows, repaired the equipment when

necessary, excepting the truck; sold, hauled, and delivered milk, and generally performed every sort of service needful to the conduct of the business. In doing this, considerable manual labor was required. For all these services he was paid only $75 per month and was allowed a limited quantity of milk free.

We find no Louisiana case pertinent to the issue discussed. Decisions in other jurisdictions are generally against defendant's contention.

In Loonsk v. Loonsk Bros. Cleaning & Dyeing Works et al., 249 N.Y. 520, 164 N.E. 568, the Court of Appeals of New York affirmed an award of compensation by the State Industrial Board, in the following language: "The claim was for the death of a son of claimant, the result of injuries received from a discharged employee of a corporation of which deceased was president. It appeared that in addition to being president, decedent performed manual labor and supervised the work done by other employees."

And in Goldin v. Goldin Decorating Company, 247 N.Y. 603, 161 N.E. 199, the Court of Appeals of New York upheld an award of compensation of the State Industrial Board, and, in doing so, said: "Claimant and two others organized a corporation to engage in the business of painting and decorating. He was elected vice president and treasurer. He was also employed by the corporation as 'inside man' or 'supervisor' at a stated salary. While engaged in loading a motor truck with painting supplies he received injuries for which the State Industrial Board awarded compensation. The insurance carrier contended that claimant was not an employee within the meaning of the Workmen's Compensation Law."

It was held in Emery's Case, 271 Mass. 46, reported in 170 N.E. 839, that a stockholder and treasurer of a corporation who was injured while performing services as a workman was entitled to compensation as an employee of the corporation.

### The Merits.

■ The testimony does not support the allegation that compensation insurance was not procured because of deceased's belief that defendant's business was nonhazardous. The president testified that this insurance was not taken out for financial reasons. The cost of it was considered too much. This contention is not tenable.

Compensation is definitely due an injured employee or his dependents, in the event of his death, except for the causes specifically defined in the act. Section 28. The failure of an employee to effect such insurance, even when he has authority so to do, is not listed in the act as a defense to an action for compensation arising out of injury to him or his death, while performing the duties of his employment.

■ Neither do we think there is merit in the contention that deceased was driving the truck, when injured, in violation of the president's orders. The answer avers that the president, on learning from deceased that he had recently had some "fainting spells," directed that he have other persons drive the truck. The president testified that he instructed deceased "not to make those runs," but to have some one else drive the truck or take some one with him. This conversation was the last the president had with him. Deceased's wife, two sons, and his family physician testified that deceased at no time, to their knowledge, was subject to these spells, and that he never advised them that he was so affected. Whether he was subject to the spells and was directed or ordered not to operate the truck without a companion, we think unimportant in determining the merits of the demand for compensation. The accident occurred and the injuries were received by deceased, resulting in his death, while "performing services out of and incidental to his employment in the course of his employer's trade, business or occupation." In this connection, we are convinced that the cause of the truck's overturning was due to high rate of speed while trying to negotiate a curve in the concrete road, at the time slippery from rainfall. The law does not say that compensation will be denied to those otherwise entitled to it simply because the servant when injured or killed was violating orders of his employer or was performing his duties in an unlawful or irregular manner. The nearest approach to such a provision is that part of section 28 of the act, reading as follows: "Or (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him."

Construing this exception, the court in Sears v. Peytral, 151 La. 971, 92 So. 561, held: "The failure of an employee riding on a truck to obey instructions not to sit on the floor with his feet hanging over the

side does not bar a recovery of compensation under the Employers' Liability Act."

See, also, McClendon v. Louisiana Central Lbr. Co., 17 La.App. 246, 135 So. 754, and cases therein cited.

The judgment appealed from is, in our opinion, correct. It is affirmed, with costs.