**MITCHAM v. URANIA LUMBER CO.,**
Limited, et al.

No. 5893.

Court of Appeal of Louisiana.
Second Circuit.

Jan. 10, 1939.

Joel L. Fletcher, of Colfax, for appellant.

Gist & Thornton, of Alexandria, for appellees.

DREW, Judge.

Plaintiff, John R. Mitcham, has sued the Urania Lumber Company, Limited, and G. M. Compton for $3 per week compensation for 400 weeks, beginning September 6, 1937, alleging that he was employed by the said Compton for the said Lumber Company to get out timber for the said Company on the lands of the said Company in Grant Parish, Louisiana, and that while performing services arising out of or incidental to his employment, to-wit: "getting out timbers on or about said date when in splitting a piece of timber it flew up and struck him in the right eye and put it out entirely"; and also claims that the injury to his right eye resulted in the loss of both eyes.

Defendants answered, denying the allegations of plaintiff's petition and explained the true facts with reference to the businesses, relationships and status of the various parties to this suit with reference to the other.

After carefully reading the record in this case and defendant's answer, apparently plaintiff's petition was drafted so as to avoid stating the pertinent facts with reference to the relationships between the parties to this suit and with reference to the alleged accident itself. We suspect that that method was pursued to the end that plaintiff's suit would not be dismissed on an exception of no cause or right of action. Obviously, under the undisputed facts of this case, plaintiff has no cause or right of action under the Workmen's Compensation Law of this State (Act No. 20 of 1914).

The facts are as follows:

The Urania Lumber Company is in the lumber manufacturing business at Urania, LaSalle Parish, Louisiana. Its sawmill plant is approximately forty miles from the plantation upon which this accident is alleged to have occurred. 1932 and 1933, the Urania Lumber Company, for investment purposes, purchased several large, old plantations located on or near Red River in Rapides and Grant Parishes. Three of these plantations were in Grant Parish. The Urania Lumber Company then, as a separate and distinct business from its lumber manufacturing business, engaged in the planting business. As to these plantations, it made a contract with various persons each to operate one of these plantations on a profit-sharing basis, the Urania Lumber Company supplying the capital, and the manager supplying the knowledge and farming experience and the supervision and actual operation of the farms. One of these plantations, known as the Calhoun place, consisted of 3,100 acres, approximately 1,200 acres in open land and 1,900 acres in cut-over hardwood land. This plantation had been operated by its former owners for many years as a plantation business.

In the operation of this plantation, Mr. Compton, one of the defendants, made arrangements with this plaintiff and others to occupy various cuts of this land, cultivating same on a share crop basis. Mr. Compton furnished each family a tenant house, advanced them the necessities of life and, at the end of the year, an account was cast and a statement rendered to each of the tenants and settlement for the year's operations of the tenant was effected. This plaintiff was a share-cropper and cultivated about 30 acres of land, about 20 in cotton and the other in corn, potatoes and other usual farm crops. As is customary on such plantations, the share tenant, when not working in his own crop and when needed in connection with the general work of the plantation by Mr. Compton, was given work of various kinds at a wage of .75 per day. At various times, especially in the spring months, plaintiff was credited with labor which he had performed for Mr. Compton on various occasions.

About the first part of September, 1937, plaintiff went to Mr. Compton and stated he had no work to do on his crop, and

requested employment of some kind. Mr. Compton advised him that he had no work for him to do, but on second thought suggested to him that if he would make some corn and cotton baskets, Mr. Compton would purchase such baskets as he needed for the plantation, and that plaintiff could probably sell some to Mr. McNeely, Mr. Compton offering to permit plaintiff to take such timber out of the woodland belonging to the plantation as might be required in making baskets.

Under this arrangement, plaintiff claims that he and his son went into the plantation woods, had cut down a four-inch sapling, and while plaintiff was preparing to split the sapling into small strips, out of which the baskets were to be woven, a piece of timber flew up and struck him in the right eye, seriously injuring same.

It is undisputed that some time in the early part of September, plaintiff went to Mr. Compton and told him he had hurt his eye and wanted to go to the doctor; that Mr. Compton accompanied plaintiff to the doctor's office in Colfax for treatment and, after some treatment there, the doctor referred plaintiff to Dr. Simmonds, an eye specialist in Alexandria. Dr. Simmonds also treated the eye and found that same had suffered a punctured wound in the edge of the cornea and, as a result thereof, the vision was greatly impaired, if not completely destroyed.

Some time in November or December, after plaintiff had been settled with for his year's crop, he and his attorney made demand upon Mr. Compton and the Urania Lumber Company for compensation on account of his injury and loss of his right eye. All liability was denied by both Mr. Compton and the Urania Lumber Company and plaintiff then brought this suit.

Eugene Mitcham, plaintiff's son, who claimed he was assisting his father when he claims to have been hurt in the woods, states that in making baskets they used axes, sledges, wedges, saws and pocket knives.

The lower court, after hearing the argument of counsel and after giving oral reasons, rendered judgment in favor of the defendants, rejecting the plaintiff's demands. That that judgment is correct, there can be little doubt.

Under these circumstances and if everything the plaintiff and his son testified to in this case is the truth, under the provisions of the Compensation Law and the jurisprudence of this State construing same, plaintiff cannot recover herein.

This is true for the reason that the fact that the Urania Lumber Company was in the sawmill business and happened to own this and other plantations, which they operated as farms, is a mere coincidence. The situation here would be identical if a banker, doctor or beauty parlor operator had owned and operated this plantation. A person or corporation may engage in a dozen different kinds of trades, businesses or occupations; some may be hazardous and others non-hazardous. For an employer to become liable for compensation, the employee must be performing work in the business, trade or occupation of the alleged employer, which is itself hazardous under the express provisions of the Compensation Law. Shipp v. Bordelon, 152 La. 795, 94 So. 399.

The plantation upon which plaintiff was a share tenant, while owned by the Urania Lumber Company, was being operated jointly by the Urania Lumber Company and G. M. Compton, who had no connection whatever with the lumber manufacturing business. If everything the plaintiff has testified to is true, he was performing work incidental to the operation of that plantation, and the plantation business and farming is not included in our Compensation Statute. Shipp v. Bordelon, supra; De Lony v. Lane et al., La. App., 155 So. 476; Resonia Thompson v. J. B. Levert Land Company, Inc., 2 La. App. 159; Tregre v. Kratzer, La.App., 148 So. 271.

In the De Lony Case, supra, the injured employee was employed to repair brick chimneys on a plantation. In the Tregre Case, supra, the injured employee was being transported in the employer's truck to the rice fields for the purpose of cutting rice. In the Resonia Thompson Case, supra, the deceased employee was a laborer on a rice plantation. While being transported to his work by his employer and while crossing Bayou Lafourche, a barge pushed by a steamboat ran into the ferry boat upon which the deceased was riding across a navigable stream, causing the death of plaintiff's husband. Recovery was denied.

So it may be seen that even though this plaintiff was a farm laborer actually employed by Mr. Compton, his employment

was not covered by the Compensation Law, and therefore he is not entitled to recover.

However, plaintiff contends that he was cutting a piece of timber for the purpose of manufacturing baskets for Mr. Compton and that he was using axes, saws, wedges and pocket knives for that purpose. Our appellate courts have held that cutting pulp wood or other wood with hand implements on a plantation is not manufacturing and is not covered by the Compensation Law.

In the case of Bradley v. Blakely, decided by this court, reported at 154 So. 415, the injured employee was cutting pulp wood on the farmer's land. The pulp wood was being cut for the purpose of sale and, while cutting the wood, the injured employee lost his eye as a result of being struck by a chip thrown from his axe. There this court specifically held that such labor was not within the Compensation Act.

In the case of Harvey M. Brasher v. Industrial Lumber Company et al., La.App., 165 So. 524, the plaintiff was employed by J. M. Pillars and William Brown to cut wood which the said Pillars and Brown sold to the Industrial Lumber Company. The First Court of Appeal there held that the cutting of fuel wood does not come within the definition of logging, lumbering or manufacturing, as said words are used in Section 1 of the Workmen's Compensation Law (Act No. 20 of 1914) and that, therefore, the plaintiff's employers were not engaged in a hazardous business under that Act.

So it may be seen that under former jurisprudence in Louisiana, even plaintiff's fundamental theory as to his right to recover herein is unsound for the reason that neither his employers were engaged in a hazardous business as designated by the Compensation Law, nor was the work he claims he was doing included under any such designation of hazardous employments in the Compensation Law.

However, there is yet another valid defense to the claims of plaintiff in this suit. He has not met that burden of proof that is upon him under the law to make out his case to a legal certainty or by a preponderance of evidence. He alleges, and he and his son claim, that he injured his eye just after he had cut down a four-inch sapling and had begun to trim same preparatory to splitting the pole into strips to be woven into baskets. Unless we accept the statements of plaintiff and his son at their face value, and without considering the other circumstances of this case, and without taking into consideration the testimony of Mr. Hill and Mr. Graham, two disinterested witnesses, the facts of this case constitute a grave doubt as to the veracity of this plaintiff and his son herein, and he has not made out his case, as required by law.

Mr. Mitcham made no demand upon these defendants herein and in no manner indicated to them that he was claiming any compensation for his eye injury, until some time probably in December, after the plaintiff had been settled with by defendants and had been accounted to for the proceeds of his crop. This indicates that his alleged claim against these defendants was probably thought of some sixty days after the date of his alleged accident. In the meantime and after his eye was injured, he states that he worked six days for defendants in skimming at their little syrup mill. Apparently he then made no claim for compensation. These circumstances, when taken together with the testimony of Mr. Hillman, plaintiff's nephew, and Mr. Graham, his friend and neighbor, indicates most strongly that in all probabilities plaintiff's right eye was defective before September or that the punctured wound therein was sustained by him while he was cutting wood for his own use.

Mr. Hillman states that he was visiting Mr. Mitcham and his son during September, 1937; that on a Sunday morning, around the first part of September, he left plaintiff's home and at that time plaintiff's eye was not injured. Mr. Hillman further states that he returned to plaintiff's home about dusk that same Sunday afternoon and that his uncle was sitting on the porch with his hand or a cloth on his eye. He told him he had hurt his eye cutting wood. Mr. Hillman was rather positive that the eye was not hurt early on Sunday, and was hurt when he returned that same Sunday afternoon. Mr. Hillman was friendly with his uncle and the only reason why he testified in this case was that, before leaving Grant Parish to go to work in Pointe Coupee Parish, he had told Mr. Graham the circumstances which he related on the witness stand. Mr. Graham told Mr. Compton and the latter, the day before the trial, went to Pointe Coupee Parish and persuaded Mr. Hillman to come to Grant Parish and testify in this case.

Mr. Ed Graham stated he lived on Mr. Compton's place, had known Mr. Mitcham since 1929. He further stated that in the early part of September, 1937, and after Mr. Mitcham had injured his eye, he visited Mr. Mitcham at his home, and that while there they discussed Mr. Mitcham's injury. Mr. Graham states that while "he did not tell me where, he said he was cutting wood and a piece of wood flew up and hit him in the eye". He also stated that Mr. Mitcham did not tell him where it was, "but he said he had one end of the wood on a block and hit the middle of it with the axe, and one piece flew up and hit him in his eye".

Either Mr. Mitcham and his son were misrepresenting the facts of this case, or Mr. Hillman and Mr. Graham were deliberately attempting to deceive this court. Since neither Mr. Hillman nor Mr. Graham has any apparent interest in misrepresenting the pertinent facts stated by them, and since Mr. Mitcham and his son unquestionably have a vital interest in the outcome of this suit, it would seem that Mr. Hillman and Mr. Graham most probably were stating the facts as they saw and heard them. If they were, there is rather a strong probability that Mr. Mitcham hurt his eye while cutting wood for himself, and afterwards decided to make this claim against defendants.

There is a strong probability that Mr. Mitcham's right eye was affected before September, 1937. His son stated that he did not know whether his father's eye was good before that time or not. Had the father never complained of the eye being bad before, it seems rather strange that the son would have testified that he did not know whether his father's eye was good prior to that time.

However, regardless of whether or not plaintiff's eye was injured in the plantation woods while he was making baskets, either for himself or for the use of that plantation, on a daily wage basis, he was neither himself injured in a hazardous occupation under the Compensation Law, and likewise, his employers, who were operating the plantation, were not engaged in a hazardous trade or occupation, under the provisions of the Compensation Law. So, in any event, plaintiff cannot recover herein, and the judgment of the lower court herein is correct and should be affirmed.

The mere fact that plaintiff, in the allegations of his petition, probably deliberately stated only a part of the facts and circumstances with reference to his employment and his employer's business, and the further fact that he greatly exaggerated his claim herein, has a tendency to cloud this whole suit in suspicion.

The judgment of the lower court is correct and is affirmed, with costs.