Joe Robinson, the plaintiff herein, was injured on September 23, 1939, while engaged as an employee of defendant in the operation of a motor powered agricultural implement on the latter's farm; and he sues to recover compensation under the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, § 1 et seq. In the alternative, through a demand in tort, he asks damages for his injuries.
A compensation award was granted plaintiff, and defendant appealed from the judgment. By way of an answer to the appeal, plaintiff requests an increase in the award. He further prays therein that his alternative demand for damages be recognized and sustained in the event of a denial of compensation to him.
The primary question presented by the appeal is whether or not the provisions of our compensation statute are applicable to the employment being followed by plaintiff when injured.
Defendant, besides being a lawyer by profession and engaged in the practice of law, owns and operates a farm of about 1,700 acres of land located in DeSoto Parish, Louisiana, less than 300 acres of which are in cultivation. On this farm he raises cotton, and also some feed stuff such as hay and sorghum. The feed crops are planted and cultivated solely for the purpose of consumption by his livestock; none of it has ever been sold.
During the 1939 farming season defendant produced about ten and one-half acres of sorghum; and in July thereof he caused it to be cut down with cane knives, tied in bundles and shocked in the field. The work was performed by his regular farm laborers without the aid of machinery. As suitable storage space for the lengthy sorghum stalks was not available he arranged to borrow from P.J. Bass, the owner of another farm in that vicinity, a portable farm implement designed for cutting them into small pieces. It is known as a Smalley Hay Chopper, the motive power for which is furnished by a tractor. Defendant possessed no equipment of that kind, and there was no one on his place experienced in the operation of it; so Mr. Bass was requested to furnish an operator.
Pursuant to instructions from Mr. Bass, the plaintiff, who had previously tended the tractor and chopper on the Bass farm, transported the desired equipment a distance of about five miles to defendant's place on Saturday afternoon, September 16, 1939; and he returned to his home the same evening. Early the following Monday morning, after his arrival at defendant's farm and after his being shown the crib to be first filled with the chopped feed, *Page 602 
he proceeded to place in position and connect up the chopper and tractor. Less than an hour was required for this purpose.
The Smalley Hay Chopper consists of four knives that are bolted to a cylinder, a trough containing a chain conveyer, a fan approximately 34 inches in diameter, and an apron or table; and it is mounted on wheels. The fan is enclosed in a metal housing, in the side of which is an opening six and one-fourth inches in diameter. This opening permits inspection of the enclosed mechanism, and it is usually closed during operations, by means of a suitable door with attached handle, to prevent the feed from spilling on to the ground. Motive power provided by the tractor reaches the implement through a belt that runs on pulleys.
As soon as the equipment was made ready and the tractor engine started on the mentioned Monday morning, the chopping of defendant's sorghum commenced. It had been brought from the fields on wagons drawn by mules. The stalks were laid on the table, pushed into the trough and onto the chain conveyer which carried them to the knives. There they were chopped; and the resulting particles were then blown by the fan through a pipe into the selected storage space, to be used later in feeding defendant's stock as occasion demanded. Plaintiff was in charge of the operations, and usually it was he who fed the stalks to the cutter; however, some of defendant's regular farm laborers assisted him.
The work continued, with plaintiff in charge, throughout each day from that Monday morning through the following Friday afternoon. During such period the equipment was moved five times in order to permit the filling of various cribs or buildings on defendant's farm. On Saturday morning, after the greasing and starting of the equipment but before actual cutting operations had begun, plaintiff extended his right hand through the above described small opening in the metal housing and contacted the whirling fan. This resulted in the complete loss of the first and second fingers and the breaking of the thumb of that hand. Medical attention was given as soon as possible, and he was then taken to a hospital.
After the accident, chopping operations were undertaken and continued by the other laborers until Saturday afternoon. The equipment was then moved across the road to another location, where it was operated for several days during the following week, filling an old house used for storage purposes by defendant.
Section 1 of Act 20 of 1914, the Louisiana Employers' Liability statute recites that "this act shall apply only to the following * * *." Subsection 1 of that section refers to persons in public service, and, of course, is not appropriate to this discussion. Subsection 2 thereof, which is to be considered in connection with the mentioned recital regarding the applicability of the Act, relates in part:
"Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations:
"(a) The operation, construction, repair, removal, maintenance and demolition * * *."
Then follows the specific naming of numerous undertakings; and after that there are general provisions relating to various business activities and also definitions concerning several of the specifically named engagements.
A study of the language of the referred to Section 1, particularly subsection 2 thereof, can lead only to the conclusion that the nature of the employer's trade, business or occupation, that is whether it is hazardous or not, is determinative of the matter of the statute's applicability; and that the particular duties being per-formed by the employee when injured are of no importance in that respect. This view has been long entertained and often expressed by our appellate courts. Shipp v. Bordelon, 152 La. 795, 94 So. 399; Dartez v. Sterling Sugars, Inc., 7 La.App. 414; Tregre v. Kratzer, La.App., 148 So. 271; Stockstill v. Sears-Roebuck Co., La.App., 151 So. 822; DeLony v. Lane, La.App., 155 So. 476.
It is appropriate to observe here that the business of farming, such as defendant pursues and in connection with which plaintiff was working at the time of the accident, is not specifically named as being affected by the provisions of the statute. Moreover, the courts of Louisiana have on numerous occasions declared it to be a nonhazardous occupation. Thompson v. Levert Land Company, Inc., 2 La.App. *Page 603 
159; DeLony v. Lane, supra; Robichaux v. Realty Operators, Inc.,195 La. 70, 196 So. 23.
It sometimes happens, however, that an employer carries on farming operations and also another distinct and separate occupation of the hazardous type. In a situation of this kind, if the employee is injured while performing duties required by and in connection with the hazardous business, the resulting disability is compensable under the statute. Robichaux v. Realty Operators, Inc., supra. On the other hand, should the injury occur while in the discharge of work in the farming or nonhazardous occupation, no compensation is due by the employer. Mitcham v. Urania Lumber Company, La.App., 185 So. 707.
Also, we might consider, in connection with this discussion, a business composed of several interrelated branches, departments, parts, or phases, the successful conduct of which depends upon the cooperation and coordination of all of those subdivisions. Indispensable to and used in connection with the work of one phase is certain machinery of the hazardous type, while the other departments of the business are not so equipped. An employee whose duties require work in the mechanized branch, even though the injury complained of results from labor performed in another portion of the business, is protected by the compensation statute. Byas v. Hotel Bentley, 157 La. 1030; 103 So. 303. No protection is afforded him, however, should his work be confined entirely to the nonhazardous part. Gray et al. v. Tremont Lumber Company, La.App., 185 So. 314; Richardson v. Crescent Forwarding Transportation Company, 17 La.App. 428, 135 So. 688.
By reason of modern trends and conditions, the employment of motors, engines and other kinds of machinery are now required for attaining success on a large scale in certain lines of endeavor that are neither named in the statute nor classified as being hazardous per se. Dairying falls within this group. When the regular or principal part of such a business is so mechanized, the compensation statute is applicable to the employees thereof who come in direct contact with the hazardous phases in the discharge of their duties. Staples v. Henderson Jersey Farms, Inc., La.App., 181 So. 48.
It would seem to follow from the above discussed jurisprudence that an occupation which is nonhazardous per se, such as farming, comes within the purview and under the provisions of the statute only when the primary or main part thereof requires the use of machinery or includes some factor that places the business in the category of a hazardous undertaking.
In the instant case, it does not appear that the employment of machinery was indispensable in carrying on the regular farming operations of defendant. There is no showing that he operated what might be called a mechanized farm. The implement causing the injuries to plaintiff, together with the tractor, was borrowed by him and used solely in preparing feed for his livestock. Its use was a mere incident to his general farming activities. There was being conducted with the equipment no regular business of chopping or cutting sorghum for the purpose of sale on the open market, such as would make applicable the provisions of subsection 2 (a) of Section 1 of the statute relating to occupations involving "the installation, repair, erection, removal or operation of boilers, furnaces, engines and other forms of machinery."
Interesting, and pertinent to this discussion, is the following reasoning, with which we concur, found in the brief of defense counsel:
"If the operation of a haycutter to facilitate the storage of feed for use on the farm comes within the Compensation Act, so does the operation of a hay press, which is a piece of machinery. A mowing machine is included within `other forms of machinery.' If the operation of a hay cutter is within the scope of the Compensation Act, so is a windmill, which is a form of machinery, and many farmers have them. A great many farmers have water wells equipped with gasoline pumps, and the operation of these pumps would serve to classify their business as hazardous if the operation of a hay cutter causes farming to be so classified."
Consequently it is our holding that the employment of plaintiff is not covered by the provisions of the mentioned statute, and his injuries are not compensable thereunder.
The alternative demand for damages, as in case of tort, is predicated on *Page 604 
the principle of law that there is actionable negligence on the part of the master in failing to warn an inexperienced servant of the dangers of the employment and to instruct him how to avoid them. In view of the evidence in the record this doctrine can have no relevancy here. It appears that when Mr. Bass purchased the chopping implement, plaintiff was thoroughly schooled as to the manner of operating it; and thereafter operations by him were successfully carried on for a number of days before the accident. When the equipment was borrowed, defendant requested its owner to provide someone capable of tending it. For this purpose plaintiff was sent. Hence, he could not be classified as an inexperienced servant, requiring warning of dangers by defendant.
The judgment appealed from is, therefore, reversed and set aside, and it is now ordered that the demands of plaintiff be rejected and his suit dismissed. Costs of both courts shall be borne by plaintiff. *Page 606