Defendant's primary business is that of farming. It operates a plantation in Red River Parish, known as Westdale, on which is located a cotton gin. Plaintiff was employed by defendant as a farm hand at a daily wage. While driving one of defendant's tractors from one field to another, he was injured when the tractor turned over. His left leg had to be amputated above the knee.
Plaintiff sues in tort to recover damages resulting from the accident and, in the alternative, for workmen's compensation on the basis of permanent total disability. Defendant denies liability on each demand. It specifically denies that its occupation or business is hazardous within the meaning or the contemplation of the Employers' Liability Act, Act No. 20 of 1914.
The lower court rejected the demand in tort and awarded plaintiff compensation for 175 weeks at the rate of $3.90 per week, and defendant appealed.
Answering the appeal, plaintiff, firstly, prays for increase in the duration of compensation payments to 400 weeks, but should this increase not be granted, he prays for judgment for the additional sum of Two Hundred ($200) Dollars, the amount necessary to equip him with a wooden leg; and, in the alternative, for judgment on his demand in tort.
We shall first consider and dispose of the tort action.
Following the noon hour of the day plaintiff was injured, defendant's overseer directed plaintiff and four other employees or tenants to drive five tractors to a field across a bayou on the plantation for the purpose of breaking land. The bayou was bridged, but for good reasons these men were directed not to cross on it, but to drive to the house occupied by a tenant by the name of Jim Dale, a mile away, and he would show them a safe place at which to cross the bayou. These directions were followed. Plaintiff's tractor led the way. Dale accompanied him and pointed out a place which he deemed safe to drive over. Plaintiff, however, was unwilling to attempt the crossing because of the steepness of the opposite bank. Dale then pointed out another site and suggested that plaintiff cross there. Plaintiff testified that this latter site "was mighty dangerous", but he decided to attempt to cross there "because I knew I was on the job; I had to try and do like the man told me. I always try to do that". In the effort to cross, the tractor turned over on its side just before it reached the top of the opposite bank.
Plaintiff alleges that when injured he was obeying orders of his superior; that these orders were given by Dale under instructions of the overseer and that his injuries: "* * * were caused solely and entirely by the gross negligence, carelessness and want of skill, as well as the reckless disregard of petitioner's rights on the part of said defendant company, its agents and employees, acting in the scope of their employment, and that petitioner did in no way contribute to said occurrence."
Defendant denies any negligence on its part as the cause or a cause of the accident, and avers that it happened solely as a result of plaintiff's lack of care, his negligence and imprudence in trying to *Page 686 
drive the tractor up a grade so steep that any one acting prudently would not have attempted to do so.
The doctrine of respondeat superior has no application to the established facts of this case. Plaintiff should have been as competent to determine the safety of the crossing as was Dale. Both are colored laborers. Plaintiff was accustomed to driving the tractor and should have known the limits of its ability to successfully take ascents. No one was goading him to cross. As a matter of fact, he made the decision to cross where the attempt was made. He admits that Dale finally told him to cross where he wished to. If the crossing appeared dangerous, he should not have attempted it. In doing so, he acted imprudently and certainly assumed the risk incident to the undertaking. These facts are sufficient to bar recovery. In addition to this, we are convinced from the testimony that the tractor's turning over resulted from plaintiff's efforts to force it to go forward after he had imprudently run into a log near the top of the bank. The ascent was slanting to one side. When the log was hit the momentum of the tractor ceased. The rear wheels began to spin when plaintiff tried to force it forward. The vehicle then turned over on its side. A prudent operator would not have tried to force the tractor forward after finding himself in the predicament plaintiff was in after striking the log. He should have waited until the other men arrived to render him assistance. They were not far away.
Plaintiff bases his claim for compensation upon two different grounds, viz.:
(1) That defendant owned and operated a cotton gin on its plantation at which plaintiff had worked.
(2) That defendant operated tractors, a form of machinery, energized by internal combustion, and that he was injured while driving one of these tractors.
To sustain the first ground, he relies upon Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303, and the many cases of the Courts of Appeal following it.
To sustain the second ground, he cites Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A.L.R. 1380, and the scores of cases based thereon.
Defendant, in support of the contention that its farming business is non-hazardous and therefore, no compensation is due by it to plaintiff, cites and relies upon the Employers' Liability Act and the following cases: Robichaux v. Realty Operators, 195 La. 70, 196 So. 23; Staples v. Henderson Jersey Farms, Inc., La.App., 181 So. 48; Bradley v. Blakely, La.App., 154 So. 415; De Lony v. Lane et al., La.App., 155 So. 476; Thompson v. J.B. Levert Land Company, Inc., 2 La.App. 159.
Plaintiff was a day laborer. He had worked for defendant for many years. He plowed, hoed, operated tractors, worked at the gin while it was running, and performed any other manual labor on the plantation assigned to him. He was injured on November 27th. It is not shown whether the gin had ceased operating for the season, but as defendant had turned its attention toward breaking land for the next year's planting, it may be assumed that the ginning was over for the year. It is not shown when plaintiff last worked at the gin, nor that he would again work there. These uncertainties should have been clarified by him, if he intended to rely upon his work at the gin as entitling him to demand compensation.
It is conceded by defendant that had plaintiff been injured while working at the gin his injuries would be compensable. This is true because the Employers' Liability Act specifically declares hazardous the business of operating a cotton gin. But, it is argued, since he was not injured at the gin nor while performing services in connection therewith, but services appertaining solely to the farming operations, the fact that he had worked at the gin does not enter into the case at all, and should have no bearing upon its merits. This position is well taken.
The operation of the gin for a few weeks each year was entirely independent of the farming operations as were these operations independent of the running of the gin. Each is and was an independent business. There was no necessary correlation between the two, although ownership is identical. There was no causal connection, not even the remotest, between service at the gin and the injury. The doctrine announced in the Byas case has no application to this state of facts.
The Employers' Liability Act declares hazardous the business or occupation of operating engines and other forms of machinery. The courts have been frequently *Page 687 
called upon to apply this provision of the act to varied states of facts, and, in response, have been exceedingly liberal. The Haddad case, supra, was the first to reach the Supreme Court in which this provision of the act was construed and applied. The salient facts of that case are these:
Defendant's business was that of handling, selling, operating and delivering motor trucks. Plaintiff, an employee, drove, sold and delivered trucks. He fell from one of the trucks while it was in motion and was killed. The court held that plaintiff's business was hazardous and that a truck is an "engine or other machinery" within the meaning of the Employers' Liability Act. Section 1.
A cursory comparison of the facts of the present case with those of the Haddad case reveals almost total dissimilarity. Other cases dealing with this provision of the act go farther in the employee's behalf than does the Haddad case. Analyses of these cases would serve no useful purpose, but would unnecessarily enlarge this opinion.
Farming per se is a non-hazardous occupation. By omission, the Employers' Liability Act makes it so. There are obvious and strong reasons why such a status should be assigned to this line of human endeavor, upon which so many people depend for subsistence. The cases cited by defendant set at rest any doubt, if any ever existed, that the occupation of farming is non-hazardous.
These questions then arise: — Does the use of the tractors in breaking land transform the farming business from a nonhazardous status to a hazardous status?
Does the use of the tractors convert the business of farming into the business of "operation of engines and other forms of machinery"? We are sure both questions should be answered in the negative.
Any discussion of this question should not overlook the well established principle that it is the nature of the employer's trade, business or occupation, that is, whether hazardous or not, which determines the applicability of the statute. The particular duty or duties being performed by the employee when injured does not enter into the question. Shipp v. Bordelon, 152 La. 795, 94 So. 399; Dartez et al. v. Sterling Sugars, Inc., 7 La.App. 414; Stockstill v. Sears-Roebuck Co., La.App., 151 So. 822; Robichaux v. Realty Operators, supra.
A review of recent jurisprudence involving claims to workmen's compensation discloses that frequently this principle has not been given the controlling influence to which it is entitled. In fact, in some cases it has been entirely ignored.
It so happens that a business entirely non-hazardous in its principal department or line may have subordinate or ancillary lines or departments which employ machinery, electrical current, etc., which brings such lines or departments within the statute; and when an employee is injured while working in the subordinate or ancillary department or line, he is entitled to compensation. Stockstill v. Sears-Roebuck Co., supra.
It has also been held that where the employer has two separate and independent businesses, one of which is hazardous and the other not, injury to an employee who works solely in the non-hazardous business is not compensable. Mitcham v. Urania Lumber Co., Ltd., et al., La.App., 185 So. 707.
In the Byas case it was held that the widow of a bell boy who was shot and killed while performing non-hazardous duties was entitled to compensation because the deceased's employment required him to discharge both hazardous and nonhazardous duties. But all these duties were performed in or about the hotel all hours of the working day.
It has also been held that when the regular or principal phase of a business, primarily not hazardous, has become mechanized by the introduction and use of motors, engines and other forms of machinery, indispensable to its successful operation, the statute is applicable to employees thereof whose duties require them to come in direct contact with the hazardous parts of such business. Staples v. Henderson Jersey Farms, Inc., supra.
Plaintiff's case falls within neither of the four lines of decisions mentioned. Defendant's business, excluding the gin, is agricultural. It has no side lines or departments. To prepare the land for cultivation, the proverbial mule and turning plow were discarded and in their place the mechanized tractor was introduced. These tractors became a part of the plantation, not independent of it, as the mule and small plows had previously been. Their *Page 688 
introduction did not establish a separate line or department in any sense of the word. By so doing, defendant did not institute a new business, that of tilling the soil. It might be said that the use of these machines as a means of tilling the land was more convenient and/or economical, but not indispensable to the carrying on of farming operations.
It requires no stretch of the imagination to visualize possible disastrous results to farmers generally if by the introduction of some needed or convenient form of machinery on their farms to improve economic or operating conditions, it should be held that the Employers' Liability Act protected employees engaged to operate such machinery. We are certain it was not the intention of the lawmaker that the statute be so construed.
The case of Joe Robinson v. J.S. Atkinson, 3 So.2d 600, recently decided by this court, is quite similar to the present one. The plaintiff was injured while working at a chopper on defendant's plantation. The demand for compensation was rejected. Pertinent jurisprudence is reviewed at length.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and plaintiff's suit is now dismissed and his demand rejected at his cost.
DREW and HAMITER, JJ., concur. *Page 901