Plaintiff instituted this suit for compensation under Act 20 of 1914, as amended. He alleged that defendant owns and operates a dairy which is a hazardous business and that while in the employ of said defendant in dairy work he lost an eye in an accident which occurred while he was performing the duties he was employed to perform.
Defendant denied owing plaintiff any compensation and alleged that he was engaged in farming as his principal occupation and that the small dairy he operated was only incidental to his main business and occupation and that the compensation act, No. 20 of 1914, as amended, is not applicable to plaintiff's case.
The lower court awarded plaintiff judgment for 100 weeks' compensation at the rate of 65% of his weekly wages and defendant is prosecuting this appeal.
Defendant was engaged in farming and raised corn, cotton, oats, hay, etc., on his place. The cotton was sold and most of the oats were sold as seed oats. The greater part of the corn, hay and other feed stuffs was used to feed the stock used on the place and the dairy cows. Defendant also operated a dairy on his farm, the size of which is not shown. He owned some milch cows which were milked by hand twice a day and every other day the milk was delivered to a creamery by a pickup truck, the kind in general use by all small farmers. On the way back from the creamery the operator of the truck would deliver two quarts of milk, one to each of two filling station operators where defendant secured his gasoline with which to operate the truck.
Plaintiff was a share-cropper on defendant's farm. He raised cotton and corn and did extra work in defendant's crop, for which he was paid extra. He was furnished a house in which to live and cut his own wood on defendant's place without charge for it. Plaintiff used free of charge all the cistern water from the roof of the house he occupied. Free water, wood, house rent are customary for share-croppers. Plaintiff finished his work as a share-cropper when the gathering of the crop was completed in the early part of *Page 607 
October. Between the time the crop was gathered and the time to prepare the land again for planting next year, plaintiff was used as a "handy-man" around the farm. He performed the jobs he was told to by defendant and was paid for each job done. He was employed to milk or assist in milking the cows, morning and afternoon, and was paid 40 cents a milking, or 80 cents a day. Every other day plaintiff was required to drive the pick-up truck and transport the milk from the dairy to the creamery and on the way back to deliver the two quarts to the filling stations.
In the early morning of January 4, 1940, plaintiff was driving the cows into the barn to be fed and milked. He carried a stick in his hand and in waving it at the cows, which did not wish to go into the barn, the end of the stick broke off and struck plaintiff in the eye ultimately causing complete loss of use of the eye. Under the above related facts, plaintiff claims compensation under Act 20 of 1914, as amended, and the lower court awarded compensation relying on the cases of Staples v. Henderson Jersey Farms, La.App., 181 So. 48, and Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303.
The lower court found that plaintiff's weekly wages were $4.29 and 65% of that amount is $2.79, which was the weekly award made by the lower court. Clearly this award, under the lower court's finding, should have been $3 per week for under no circumstances where the plaintiff is receiving more than $3 per week can his compensation award be less than $3 per week. It is only when he is earning less than $3 per week that a lesser amount can be awarded. Under this last condition he will be awarded the amount of his weekly wages based upon his daily wage. However, we are of the opinion the judgment is erroneous in allowing any compensation and in holding that the compensation act is applicable to the case.
In the Staples case it was not our intention to say, if it can be so interpreted, that every farmer who owned and operated a pick-up truck was subject to the compensation law. In that case we found that the dairy was entirely mechanized with electric milkers, separators, boilers, pulleys, etc., and that the farm was mechanized in that the land on which the feed for the dairy herd was raised was plowed by tractor and the crop cultivated with mechanized farming equipment as well as the milk being delivered by motor truck. We found in fact that the dairy in that instance was a manufacturing plant in that the milk was pasteurized and prepared in various ways by machinery for market. There is clearly a distinction between a completely mechanized dairy and a small farmer who farms the land and owns a few milch cows from which he sells his excess milk although he delivers it by motor truck. If we could find that defendant's business was a hazardous one then the Byas v. Hotel Bentley Inc., case would be applicable and authority for awarding plaintiff judgment, although he was injured in a non-hazardous part of the business.
We are frank to admit that it is difficult to distinguish the case at bar from many opinions of the appellate courts of this State as well as those of late from the Supreme Court. But, to our minds, it is certain that it was never the intention of the lawmakers to extend the provisions of the compensation act to cover all classes of employment. It was originally intended to cover those engaged in the general run of industrial pursuits. It is certain that it was never intended to cover the small farmer or small merchant who is engaged in selling groceries and formerly delivered them by horse and wagon but now is forced to use motor delivery trucks to compete with the fast-moving competitors.
It can be truthfully said that when the Act was passed in 1914 there were few if any small merchants who owned motor trucks and certainly few if any small farmers who owned pick-up trucks or other machinery on their farms. But today, due to the frugality and progressiveness of the farmer and with the help of different governmental agencies, millions of small farmers own trucks and their homes are equipped with electricity and many electrical appliances for their convenience. They pump the water from the wells with electric pumps and bale the hay from their small meadows with mechanized hay-balers, many of which things can well be classed as other forms of machinery. To find that the compensation act applies to their employees would be to penalize frugality and progressiveness and an effort on the part of the small farmer to raise or better his standard of living.
No law should ever be so interpreted for such an interpretation would greatly retard the progress of those who till the soil. *Page 608 
They would be forced to desist from having the conveniences provided for them, through fear of being mulcted for compensation by some employees and one such judgment would force bankruptcy as not one out of twenty could pay such a judgment and live on his earnings from a small farm. Neither can they afford to pay the cost of compensation insurance against such an event. If the compensation act could be extended to cover the employees on a farm because of advancement of living conditions, which was never meant by the lawmakers, why not extend it to cover the home and bring the cooks, maids and other servants under it? The great majority of homes are equipped with gas, electricity and all that goes with these conveniences, such as electric or gas refrigerators, washing machines, floor-sweepers and many other mechanized devices which might easily be classed as other forms of machinery and that the home is a hazardous place is borne out by statistics, which show us that more accidents occur in the home than anywhere else and more fatal accidents occur in the home each year than do in the use of automobiles.
It is needless to say that the great majority of home owners and heads of households are also owners of automobiles and the servants, including the maids and yard-boys, are in many instances called upon by the members of the family to drive the car as part of their employment and the nurses are required to ride in the cars and hold the babies.
The reason the courts will not hold the heads of households liable for compensation for accidental injury to servants is because the law has never declared the operation of a home as a hazardous business. It likewise has never declared the operation of a farm where cotton, corn, oats and hay are raised, a few milch cows kept and the excess milk sold, as a hazardous business. And because there is a motor vehicle on the place which it is convenient to use occasionally in furtherance of some minor part of the business, does not make the business of a farm hazardous.
If the owning of a small truck, such as ninety per cent of the farmers, small and large, own today and which the farmhands are required to use occasionally, will make the compensation act applicable, then ninety per cent of the farmers are engaged in a hazardous occupation which the compensation act never intended to include in its provisions.
The error into which all the courts of this State have fallen at times is in considering the nature of the employment of the employee at the time of injury and overlooking the fact that it is the nature of the employer's principal business that governs and not the nature of the immediate employment of the employee.
It would not strain the imagination to show that the present trend of the jurisprudence in this State, in interpreting the compensation act, has and will make it cover every owner of an automobile or other mechanical device which can be classed as other forms of machinery regardless of the nature of his principal business or occupation. That such was not the intention of the lawmakers in passing Act 20 of 1914 and amendments thereto cannot be doubted.
We are convinced that the case at bar is not covered by the compensation act of this State and the judgment of the lower court is erroneous and is now reversed and the demands of plaintiff are rejected at his costs.
TALIAFERRO and HAMITER, JJ., concur. *Page 648