Ralph Schenck, an employee of the AAA Auto Wrecking Company, a partnership, was severely burned as a result of an explosion of the gasoline tank of an old automobile which he was demolishing. In removing the tank he was making use of an acetylene torch. It is alleged that the accident resulted from and occurred in the course of his employment; that he was permanently and totally disabled; that he had been employed at a rate of pay which entitled him to compensation at $17.58 per week, and that the business of his employers and the work at which he was engaged were such as to entitle him to the protection of the compensation law of Louisiana (Act No. 20 of 1914, as amended).
He brought this suit against the partnership and the three members thereof, Fred W. Smith, Stanley Kaliski and Clarence Kinchen, praying for solidary judgment for 400 weeks at $17.58 per week.
The Board of Administrators of Charity Hospital of New Orleans intervened and, alleging that it had rendered hospital services and had furnished drugs and medicines, etc., to Schenck; that these were made necessary by the accident, and that the cost of these services, etc., had been $162.50, prayed for judgment against the defendants for that amount, with legal interest from judicial demand and for attorneys' fees at 10% of the total amount due.
The defendants, though admitting the occurrence of the accident and that compensation payments had been made to Schenck for several weeks, denied all liability asserting that for any or all of the following reasons, the suit should be dismissed:
1. That the business of the employers and the work at which Schenck was engaged are not among the hazardous employments which are specifically designated in the Compensation Act as being within its coverage; that no agreement was made that the Compensation Act should apply to Schenck's employment in spite of the fact that it is not listed in the Act and that there has been no judicial decision declaring the said employment to be hazardous and within the contemplation of the statute;
2. That in using the acetylene torch, Schenck was deliberately acting in violation of the instructions of his employers;
3. That there had been furnished to Schenck for the work in which he was engaged a cold chisel and a hammer which could have been safely used and that these tools should be considered as guards or safety devices which would have prevented the occurrence of the accident, and, that, therefore, since he deliberately refused to use these guards or safety devices, it should be held that the injury was caused by Schenck's "deliberate failure to use an adequate guard or protection against accident provided for him."; *Page 557 
4. That the accident did not occur in the course of his employment and did not arise out of it since he willfully and deliberately refused to do the work in the manner in which he had been instructed to do it and, without any right and against positive instructions, attempted to use a tool which had not been assigned to him;
5. That if plaintiff is suffering any disability at this time it is caused by his refusal to accept proper medical treatment;
6. That if there ever was any liability to plaintiff, it has been completely discharged by reason of the fact that defendant has made to him for "ten or eleven weeks" payments at the rate of $17.50 per week; and
7. That if there is any liability, the amount claimed by plaintiff is not justified by the rate of pay at which he was employed at the time of the injury.
The record shows that Schenck, for two days, had been employed by the defendants in the cutting up into scrap of old automobiles. It was his duty to remove all of the accessories or parts which might have a secondhand value and to then use an acetylene cutting torch to convert what remained into scrap metal.
It is made very clear that defendants were dissatisfied with the work which Schenck was doing with the torch and that they therefore "laid him off as a burner" and then employed him as a helper to work with another employee, Ray Rice, who was a burner. The record shows that it was not considered safe to use this torch or burner in removing the tanks of old automobiles because of the possibility of there being refuse gasoline in some of them and that this part of the work was done with a cold chisel and hammer. In other words, the employees were told to use a hammer and chisel in cutting off bands which hold the tanks to the automobiles, to remove the tanks and then to cut up the bodies of the cars with the torch. It is thus very clear from the record that Schenck was told that he was not to use the torch at all and that other instructions were given that even the employee who could use the torch was not to do so in taking off gasoline tanks.
Schenck says that he was not a helper but a burner and that because of defendants' desire to save time in the demolition of a large number of cars which were on hand, he was told to use the torch on the tanks as well as on the other parts. But his testimony is woefully weak and leaves no doubt at all that not only was he not employed as a burner but that he was particularly told not to use the torch, and that all employees knew that the instructions were that the torch was not to be used on gasoline tanks. It thus appears that without the knowledge of defendants and against positive instructions, Schenck gained possession of the torch and attempted to use it in removing a tank.
While there is some testimony which tends to corroborate plaintiff's version, it is not at all convincing and is overwhelmed by the testimony which supports defendants' contention. In many trivial matters, plaintiff is shown to be entirely untruthful. His testimony as to his rate of pay is shown to be absolutely false, and he goes to some length to prove that he was the "boss" and that Rice was the "helper", whereas it is very clear that he was only the assistant. He also attempts to prove that the employers were most anxious to have him come back to work, and begged him to do so, and this does not seem to be the fact.
In making use of the torch in violation of instructions he turned aside from his employment and voluntarily undertook to meddle with a tool with which his work did not bring him into contact. There is not involved here a mere careless disobedience but a deliberate determination not to use the tools which were provided and to meddle with another dangerous one which he had been instructed not to touch.
The legal principle which is involved is set forth in such cases as Pierre v. Barringer, 149 La. 71, 88 So. 691, and Gooding v. Beauregard Laundry Co., Inc., 9 La.App. 392, 120 So. 507.
In the Barringer case the plaintiff "was engaged as a fireman in a sawmill." It was shown that "his employment did not take him in the vicinity of the circular saw by which his hand was severely injured."
He had wandered away from the boiler at which he was employed and had deliberately meddled with a much more dangerous piece of machinery. The court held that the accident had not occurred in the course of employment and had not arisen out of it.
In the Gooding case the plaintiff "was employed as a porter in the laundry of the defendant company." It was shown that "his duties did not require him to come into contact with the laundry machinery." *Page 558 
On the day of the accident he had completed his usual duties and, without the knowledge of any one, had attempted to operate one of the laundry machines. We held that there was no liability in compensation saying: "* * * It appears to us, therefore, that the evidence conclusively provides that the plaintiff had stepped aside from his line of duty and was voluntarily meddling with dangerous machinery with which his employment had no connection whatever."
Counsel for plaintiff argues that the principle involved here is the same which has been upheld in the many cases involving injuries resulting from horseplay among employees. He contends that if it is proper to say that employees who are injured while engaged in incidental horseplay sustain their injuries in the course of their employment and by accidents arising out of it, it surely should be said that employees who, in the interests of their employers, attempt to do their work more speedily by using more dangerous implements than those provided, should also be said to be in the course of their employment while doing so.
We think that there is a vast distinction. In the horseplay cases, the courts merely recognize the human tendency to play at times and hold that if there is no intentional and deliberate determination to step aside from the work, and if the play is only that which so often is indulged in, not as something apart from the work but as something which may almost be termed a part of it, the employee should not be deprived of his right to recover because of this playfullness. The late Mr. Justice Cardozo in Leonbruno v. Champlain Silk Mills, 229 N.Y. 470,128 N.E. 711, 13 A.L.R. 522, said: "* * * The claimant's presence in a factory in association with other workmen involved exposure to risk of injury from the careless acts of those about him. He was brought by * * * his work `within the zone of special danger.' * * * Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. We think with Kalisch, J., in Hulley v. Moosbrugger, 87 N.J.L. 103, 93 A. 79, [8 N.C.C.A. 283], that it was `but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age, or even of mature years, to indulge in a moment's diversion from work to joke with or play a prank upon a fellow worker, is a matter of common knowledge to everyone who employs labor.' The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment."
But where the employee willfully and deliberately refuses to obey instructions, and turns aside from his work and intentionally meddles with tools or machinery which are not assigned to him, if he is injured surely it is proper to say that his injuries did not occur in the course of his employment and did not arise out of it.
Since, for the reasons given, plaintiff's suit was properly dismissed, it is not necessary that we consider the other defenses which were raised.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 719