Plaintiff was badly burned from the flames of ignited gasoline the night of August 29, 1948, while performing the duties of a contract of hiring allegedly with Forcum-James Company and H. N. Rodgers and Sons, and instituted this suit against the Travelers Insurance Company and Associated Indemnity Corporation, alleged insurers of said employers, to recover workmen's compensation at the rate of $30.00 per week for four hundred weeks, less four weeks payments theretofore made, on the theory of total permanent disability, and for medical expenses.
The suit is resisted on these grounds: That plaintiff was injured while deliberately violating a specific rule and order of his employer; that he voluntarily turned aside from his duties and subjected himself unnecessarily to a danger which did not arise out of nor was it incidental to his employment, and while thus engaged he was injured; that he deliberately failed to use an adequate guard or protection against accident. Defendants at length narrate the facts of the case which form the basis of the defenses enumerated above, which we shall hereinafter give and discuss.
It developed during trial that plaintiff was an employee only of Forcum-James Company and that the Associated Indemnity Corporation carried compensation insurance for that company as to the particular job being done whereon plaintiff was hurt. Therefore, H. N. Rodgers and Sons and the Travelers Insurance Company passed from the case.
From a judgment for the plaintiff, as by him prayed against the Associated Indemnity Corporation, the insurer of Forcum-James Company, appeal is prosecuted by that company. The court gave written reasons for judgment.
The facts attending the accident are, in the main, not in dispute. The Forcum-James Company was engaged in the construction of a line of levee on Red River not far south of the Town of Colfax, Louisiana. Dirt was being handled by means of a mechanical dragline. Three eight-hour shifts were employed to carry on the work. To effectively perform dirt removal at night it was necessary, of course, to illumine the locale by electric lights and a separately enclosed gasoline motor and dynamo were provided therefor. These were located very close to the machinery that operated and controlled the dragline. Plaintiff's job was that of dragline oiler, and inter alia, it was his duty to keep the tank of the lighter motor continuously supplied with gasoline.
At about the hour of 9:30 P. M., on said date, all of the lights about the locale of the work went out and work immediately ceased. The conclusion was instantly reached that this was due to exhaustion of gasoline in the lighter tank. Plaintiff, with the aid of a flashlight, at once investigated and found this to be true. He picked up a five gallon can of gasoline that was in the cab and successfully poured the contents thereof into the tank. He was then given another five gallon can of gasoline and this was being poured into the tank when plaintiff directed a Negro boy helper nearby to crank the motor so that the current would be renewed. The boy at first demurred because he knew it was dangerous and against the employer's rule and order to do this while gasoline was being poured into the tank. Plaintiff in stronger language again ordered the Negro boy to crank the motor. He did so and the lights immediately beamed forth, but, after the lapse of a few seconds, there was an explosion. For some unknown reason gasoline ignited and plaintiff was badly burned from the flames which, it is not disputed, rendered him totally permanently incapacitated to perform any sort of work.
In his testimony plaintiff denied that the lights were burning when the explosion occurred, and lists more than one possibility for the explosion, but the lower court found and held that the lights were on and burning at the time of the explosion. We *Page 806 
agree with this conclusion. The court also found and held that pouring the gasoline into the tank while the motor was running was in violation of the employer's rule and order, announced by its foreman and others to employees, of which plaintiff had knowledge. The record also abundantly supports this holding. The court mainly predicated its judgment upon Staples v. Henderson Jersey Farms, Inc., La. App., 181 So. 48, decided by this court.
In view of the facts as above related, the cases involving accidents and injuries to employees after turning aside from their regular duties are not applicable. It is also made clear that when the accident occurred plaintiff was in the course of his employment and was performing duties required thereby. It was his duty to put gasoline in the tank and to start, or have started, the motor by cranking. Therefore, the pivotal question is whether, in view of the circumstances and established facts, plaintiff is barred from recovering compensation for his disabling injuries.
Plaintiff's counsel correctly argue and contend that Act No. 20 of 1914, being the Employers' Liability Act, contains no express prohibition against recovery of compensation by one otherwise entitled so to do, on the ground that when injured the workman was violating an order or rule of his employer. Section 28 of that act creates four special defenses that are available to the employer in a suit for compensation by an injured employee or his dependents. As is said in Pisk v. Brooklyn Cooperage Co., 143 La. 455-459, 78 So. 734, 735, this section:
"withholds the benefit of compensation for injury caused (1) by the employe's willful intention to injure himself or to injure another, or (2) by the injured employe's intoxication at the time of the injury, or (3) by the injured employe's deliberate failure to use an adequate guard or protection against accident provided for him, or (4) by the employe's deliberate breach of statutory regulations affecting safety of life or limb."
Defendant herein pleads the third of said special defenses against the demand.
But, in the several cases reaching the courts of appeal of this state, wherein recovery of compensation was opposed on the ground that when injured the employee was violating an order or a rule of the employer, the court went ahead and considered the defense and adjudicated each case without mentioning that such a defense is not expressly provided by the Employers' Liability Act. In some of these cases it was held that when injured the workman, in addition to violating an order or rule of his employer, was not in the course of his employment and/or that he was not then performing services arising out of and/or incidental to such employment. In other cases compensation was denied simply on the ground that the employee, when injured, was in the act of violating a rule or order of his employer, although at the time doing what he was employed to do. Prominent among such cases is that of Schenck v. AAA Auto Wrecking Company, et al., La. App., 13 So.2d 556, 557, which is cited and relied upon by the defendant. In that case it was found that plaintiff and other employees of the defendant were instructed to remove gasoline tanks from old automobiles by the use of a cold chisel and hammer, and were specifically forbidden to remove the tanks by the use of acetylene torches because of the danger from explosion of gasoline that might be in the tanks. Plaintiff, in violation of this order, began removing tanks with the torch and while so doing an explosion from gasoline in a tank occurred, and he was burned. His suit for compensation was rejected. In the course of the opinion, it is said:
"In making use of the torch in violation of instructions he turned aside from his employment and voluntarily undertook to meddle with a tool with which his work did not bring him into contact. There is not involved here a mere careless disobedience but a deliberate determination not to use the tools which were provided and to meddle with another dangerous one which he had been instructed not to touch."
To support this ruling, Pierre v. Barringer, 149 La. 71, 88 So. 691, and Gooding *Page 807 
v. Beauregard Laundry Company, Inc., 9 La. App. 392, 120 So. 507, are cited.
Defendant also cites and relies upon Lawhorn v. A. W. Pettigrew, Inc., 12 La. App. 455, 125 So. 298. The plaintiff's suit for compensation was denied. The facts of this case are these:
Defendant had acquired the right to cut and manufacture ties from timber on a certain tract of land, but before beginning operations desired to have the lines around the land established by a competent surveyor. This fact was made known to the tie makers in defendant's employ who were instructed not to begin the manufacture of ties until the survey had been made. Plaintiff, contrary to these instructions, entered upon the land and began making ties by cutting trees thereon. A tree fell upon him and he died from the injury. This case turned not so much upon the disobedience of orders, but because it clearly appeared that plaintiff was, when injured, not acting within the course of his employment.
The contention of defendant herein that pouring gasoline into the tank while the motor was running, as was done, amounted to "deliberate failure to use an adequate guard or protection against accident", we believe to be not tenable. It is not clearly pointed out wherein this defense is applicable to the undisputed facts of the case. No express method had been suggested as to how the gasoline should be put into the tank and no particular utensils were recommended for that purpose. The use of a funnel, as was done, is the usual and customary means of making such a transfer. As to what constitutes an adequate guard, etc., the Supreme Court in Farris et al. v. Louisiana Long Leaf Lumber Company, et al., 148 La. 106-117, 86 So. 670, 674, said:
"Our answer to the argument is that the provision invoked presupposes a specific danger, with an appropriate and adequate guard and protection against it; knowledge of both danger and guard, brought home to the employee; and a 'deliberate' failure on his part to make use thereof; and that it has no application to a case where no guard or protection has been provided against the danger the assumption of the risk of which has caused the accident * * *."
It is our opinion that the special defenses created by and enumerated in Section 28 of the Employers' Liability Act are exclusive; and where it is shown that when injured the workman was performing service arising out of and incidental to his employment in the course of his master's hazardous business, interposition of one or more of said defenses, supported by adequate proof by the employer, is indispensable to the avoidance of being cast for compensation. This view was expressed in Piske v. Brooklyn Cooperage Company, supra, wherein the court said:
"In other words, plaintiff argues that the only workmen who are excluded from the benefits of the act are those who, in the language of the act itself, 'shall be eliminated * * * for the causes and reasons set forth in section 28.' That argument is sound, provided that by the word 'workmen' are only meant workmen who were injured by accident arising out of and in the course of their employment, for the act is not intended for the benefit of any other class of workmen".
In that case, however, it was finally held that the deceased workman when injured was not performing services incidental to his employment in the course of his master's business.
In Jones v. Landry, 10 La. App. 740, 122 So. 913, it appeared that plaintiff lost a hand while feeding moss to the rollers of a ginning machine from the side thereof, instead of from the front, as she had been instructed to do. The defense was that the injury occurred because she was disobeying orders when injured and was not availing herself of a guard (apron) attached to the front part of the machine. These defenses were rejected and in doing so, the court said:
"The defendant testifies that he had warned plaintiff against the practice of feeding * * * the moss to the rollers from the side, instead of from the front, where there is a board about 30 inches wide, called an 'apron', which, it is said, is intended to protect operators against getting their hands caught in the rollers. Perhaps *Page 808 
this board affords some protection by keeping the body of the operator at a distance from the rollers, but it appears to us as very inadequate."
In Sears v. Peytral, 151 La. 971, 92 So. 561, 563, it was found that plaintiff was injured while sitting on the floor of the bed of defendant's moving truck, with his legs over the side, in disobedience of orders, instead of sitting on an empty box provided for him and other laborers who were transported to and from their work. In rejecting the defense urged against the claim for compensation, the court used this language, to-wit:
"The adequate protection against accident referred to consisted of two empty boxes put in the truck to block the granite that defendant was on his way to get. They doubtless afforded very uncomfortable seats in driving overwhat apparently was a rough street. But be that as it may, we do not think that they come within the purview of the statute, and that the failure of the plaintiff to obey instructions by sitting where he did does not debar him from recovering."
In Staples v. Henderson Jersey Farms, Inc., supra, this court held that because plaintiff was injured while driving defendant's truck contrary to the orders of its president, the claim for compensation was not barred.
And in Sellers v. Louisiana Sawmill Company, Inc., 8 La. App. 779, compensation was allowed although the plaintiff was injured while attempting to board the train from which he had immediately alighted, contrary to the admonition of his superiors.
Negligence of an employee is not a defense to an action to recover compensation under the Employers' Liability Act, except insofar as it is comprehended within the special defenses contained in said Section 28. The reason, it seems to us, that disobedience to orders was not included in said Section 28 or elsewhere in the act, as a defense to a suit for compensation, is simply because had such been done the abolition of negligence as a defense in such an action would have been rendered practically, if not wholly, nugatory. Disobedience by a servant to orders and/or instructions of his master, whether wilful or not, is a form of negligence which has been defined to be "the result of a failure to perform a duty".
For the reasons herein assigned, the judgment from which appealed is affirmed with costs. *Page 860